# Richmond

## AARON TYLER LANGHORNE

v.

## COMMONWEALTH OF VIRGINIA

No. 0305-90-2

Decided September 17, 1991

COUNSEL

Craig S. Cooley, for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLEMAN, J.—Aaron Tyler Langhorne was convicted of distributing heroin in violation of Code § 18.2-248 and conspiring to distribute heroin in violation of Code §§ 18.2-256 and 18.2-248. The trial court sentenced Langhorne in accordance with the jury verdicts to thirty years imprisonment and a $20,000 fine. Langhorne claims the trial court erred by: (1) admitting evidence that he failed to appear for trial when the case was originally scheduled; (2) admitting evidence that he attempted to flee from the police when they came to arrest him for not appearing at trial; (3) granting a jury instruction on flight; (4) admitting evidence · that the police seized a pager from his residence when they arrested him; (5) refusing to admit his wife's handwriting sample and by refusing to admit an incriminating statement which she allegedly made; (6) overruling a *Batson* challenge to the Commonwealth's peremptory strike of juror Moseley; and (7) refusing to strike the evidence as insufficient to support his conviction. We hold that his contentions are without merit, and we affirm the convictions.

On November 16, 1988, Robert Sutton, an informant who had been working with the Richmond City Police, encountered Aaron Langhorne and his wife, Ardes, and told them he was interested in making a wholesale purchase of heroin. Sutton had known the Langhornes since the 1970s. Sutton told the Langhornes his money to buy drugs was at his home. Ardes drove him there. When they arrived, Sutton told Ardes he would not have the money available until that evening, and they arranged to meet later. Detective Randy Davis, an undercover agent who worked with Sutton, came to Sutton's home in anticipation of the arranged meeting to provide him with money for the drug buy. After Sutton agreed to a price set by Ardes Langhorne, Detective Davis gave her $400. In return, Aaron Langhorne gave Sutton a plastic wrapper containing tin foil packets of heroin and quinine, a

common drug-cutting agent. After the drug sale, Aaron Langhorne gave Sutton a slip of paper with the telephone number to his pager, and he assigned Sutton the code number "50" so Sutton could "keep in touch." Detective Davis testified that Aaron Langhorne wrote the number on the piece of paper. Sutton did not state who wrote the number, but only that Aaron Langhorne gave him the paper. Sutton testified that when he called the pager number and gave his code, Aaron Langhorne returned his call.

After Detective Davis had finished his undercover assignment and the Richmond grand jury had returned indictments, a Chesterfield County investigator arrested Langhorne and his wife on April 6, 1989, at their home. The investigator seized two pagers from the nightstand in the Langhornes' bedroom; one of these pagers had the corresponding phone number which Langhorne had given to Sutton. The pagers were admitted into evidence over Langhorne's objection that they were irrelevant and prejudicial.

Langhorne was first scheduled to be tried on these charges on July 6, 1989. He failed to appear for trial. A capias was issued for his arrest. He remained at large until arrested again on November 30, 1989. Langhorne was tried on February 12, 1990. Over Langhorne's objection, the jury was told that Langhorne had failed to appear for his July 6, 1989, trial. The Commonwealth offered the evidence to prove flight from prosecution on the theory that it showed consciousness of guilt. Additionally, an officer of the Richmond City Police Department testified that on November 30, 1989, he stopped the operator of an automobile for a traffic violation. Aaron Langhorne, who was the front seat passenger, first gave the officer a false name and then jumped from the vehicle and attempted to flee. Langhorne objected that the evidence was prejudicial and outweighed any probative value to prove flight, particularly since the flight was remote in time and not necessarily related to the commission of these crimes. Langhorne argues that because he had multiple charges pending against him and was on Richmond's top ten most wanted list, the jury could not clearly infer that he was attempting to escape because of his "consciousness of guilt" for these crimes.

Neither Aaron Langhorne nor his wife, Ardes, testified at his trial. The court was advised *in camera* that Ardes Langhorne had admitted to the police that she had been the one to write down the pager number for Sutton, contrary to the testimony of Detective

Davis. The court was told that she had provided the police a handwriting sample for comparative analysis.[1] Aaron Langhorne offered a separate handwriting sample of his wife into evidence for the jury to compare to the writing furnished Sutton. The trial court refused to allow the officer to testify that Ardes Langhorne admitted to him that she had written the pager number. The trial court based its ruling on the fact that Ardes Langhorne had not been called as a witness and, thus, the evidence was not relevant to impeach her credibility, nor was it admissible on some theory of an exception to the hearsay rule for an unavailable witness. The court refused to admit her handwriting sample for the jury to compare and refused to admit the results of the laboratory analysis which were inconclusive as to whether her exemplar matched the writing.

## I.  EVIDENCE OF FLIGHT

A.  *Failure to Appear for Trial*

No reported Virginia cases have decided whether evidence that an accused failed to appear for trial is admissible to prove flight to avoid prosecution and, thus, is relevant as a circumstance tending to prove consciousness of guilt. Langhorne contends the trial court erred by allowing the jury to learn that he had failed to appear for his trial. He points out that failure to appear for trial amounted to evidence of another offense, a violation of Code § 18.2-248(B), and such evidence did nothing to prove any element of the charges against him.

 As a general rule, only under limited circumstances may evidence of other offenses by an accused be admitted to prove the offense at bar. *Spencer v. Commonwealth*, 240 Va. 78, 89, 393 S.E.2d 609, 616, *cert. denied*, 111 S. Ct. 281 (1990). Many jurisdictions, however, have held that failure to appear for a scheduled trial is evidence of flight and is, therefore, admissible. *See United States v. Crosby*, 917 F.2d 362, 368 (8th Cir. 1990); *United States v. Ritch*, 583 F.2d 1179, 1181 (1st Cir.), *cert. denied*, 439 U.S. 970 (1978); *United States v. Accardi*, 342 F.2d 697, 700 (2d Cir.), *cert. denied*, 382 U.S. 954 (1965); *Hanks v. United States*, 388 F.2d 171, 175 (10th Cir.), *cert. denied*, 393 U.S. 863 (1968); *State v. Roderick*, 9 Ariz. App. 19, 22, 448 P.2d 891, 894 (1968);

---

[1]  The laboratory analysis comparing the handwriting to the slip of paper with the pager number proved inconclusive.

*Smith v. State*, 695 P.2d 1360, 1363 (Okla. Crim. App. 1985); E. Cleary, *McCormick on Evidence* § 271 (2d. ed. 1972); 29 Am. Jur. 2d *Evidence* § 285 (1967); 1 C. Torcia, *Wharton's Criminal Evidence* § 154 (14th ed. 1985). We adopt this majority position.

■ Evidence of flight is "a circumstance proper to be laid before the jury as having a tendency to prove [a defendant's] guilt." *Allen v. United States*, 164 U.S. 492, 499 (1896). Although flight to avoid prosecution is evidence of another offense, it is nevertheless admissible to show a consciousness of guilt. *See Bowie v. Commonwealth*, 184 Va. 381, 392, 35 S.E.2d 345, 350 (1945); *Jenkins v. Commonwealth*, 132 Va. 692, 696, 111 S.E. 101, 102 (1922); *Hope v. Commonwealth*, 10 Va. App. 381, 386, 392 S.E.2d 830, 834 (1990). At the request of the Commonwealth's attorney, the trial court took judicial notice of its records, which indicated that Langhorne failed to appear at his original trial. The court did not err in doing so or in receiving the evidence as proof of flight.

## B. *Fleeing to Avoid Detection, Apprehension, or Arrest*

Langhorne also objected to the evidence that he attempted to flee on November 20, 1989, when the police stopped the automobile in which he was riding. He claims that the remoteness in time of this incident to the occurrence of the crime and the fact that he had other charges pending against him, render the evidence irrelevant and, therefore, inadmissible. We disagree.

Admittedly, the Supreme Court has expressed doubt as to the probative value of flight evidence. *See Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963) ("We have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime"). Nevertheless, "it is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970).

> Due to the fact that flight evidence is sometimes ambiguous, courts at times assert that such evidence is of questionable probative value unless the inferences of guilt that accompany the particular facts associated with it are strong. . . .A

court will generally scrutinize the facts of each case to determine whether the jury should be given an opportunity to draw on [sic] inference of guilt from the defendant's flight.

*United States v. Martinez*, 681 F.2d 1248, 1257 (10th Cir. 1982) (surveying cases where flight evidence was held inadmissible because of particular facts which tended to detract from the probative value of such evidence).

■■■ "The flight need not immediately follow the commission of the crime since the defendant may be suspected and become aware of the suspicion at a later date." *Hope*, 10 Va. App. at 386, 392 S.E.2d at 834. The Langhornes were not arrested until five months after the drug sale, when Detective Davis' undercover operation was complete. They had no reason, insofar as the record shows, to flee earlier. Any flight at a time when it may be to avoid arrest, prosecution, or confinement tends to show a consciousness of guilt. The remoteness in time of the flight goes to the weight of the evidence and not to its admissibility. *See* 29 Am. Jur. 2d *Evidence* § 280 (1967). *See also State v. Ball*, 339 S.W.2d 783, 785 (Mo. 1960); *State v. Reid*, 559 P.2d 136, 150 (Ariz. 1976), *cert. denied*, 431 U.S. 921 (1977). Whether a defendant "fled" immediately does go to admissibility of flight evidence where "the defendant does not know, or his knowledge is doubtful, about the charges and the accusations made against him." *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1106 (9th Cir. 1979). "The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense." *United States v. Myers*, 550 F.2d 1036, 1051 (5th Cir. 1977), *cert. denied*, 439 U.S. 847 (1978). It is equally true, however, that "the importance of the immediacy of the flight is diminished if there is, as here, other evidence to indicate that the defendant knew he was sought for the crime." *Martinez*, 681 F.2d at 1258 (citation omitted). Langhorne knew of the heroin and conspiracy charges pending against him and knew, at the time of his flight, that he was being sought in connection with those crimes. He deliberately failed to appear at an earlier trial scheduled for the charges. He cannot avoid the inferences which the fact finder may draw from his actions because other charges were pending against him and he may also have been evading those charges. *See Hope*, 10 Va. App. at 386, 392 S.E.2d at 834.

Because the evidence of flight was properly admitted, the trial court did not err by granting a jury instruction on flight. *See Stewart v. Commonwealth*, 10 Va. App. 563, 570, 394 S.E.2d 509, 514 (1990). In this case, the instruction informed the jury of the weight they were permitted to give the evidence:

The intentional flight of a defendant immediately after the commission of a crime or after he is accused of a crime that has been committed is not, of course, sufficient evidence in itself to establish his guilt, but is a fact which, if proved, may be considered by the jury in the light of all other evidence in the case in determining the guilt or innocence, whether or not evidence of flight shows a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury. In considering any evidence of flight, the jury should consider the motive which prompted it.

The trial court's instruction on flight was correct and complete. *See Smith*, 695 P.2d at 1363; *see also Roderick*, 9 Ariz. App. at 23, 448 P.2d at 895.

## II.  OTHER EVIDENTIARY RULINGS

The trial court admitted into evidence testimony of the arresting officer that he seized two pagers from Langhorne's bedroom nightstand and testimony that Langhorne had written the number for one of the pagers on a piece of paper which he gave to Sutton. The piece of paper bearing the pager number was admitted into evidence. Langhorne objected to the admissibility of the evidence of the pagers and paper with the recorded number on the ground that the evidence was irrelevant and prejudicial. He contends that the evidence did not show that the pager was used in any way by him and that its admission merely suggested a clandestine network. In addition, Langhorne points out that, before trial, Ardes Langhorne told the police that she, not her husband, had written the pager number and that she had given the police a handwriting sample for comparison. Detective Davis acknowledged that a writing sample had been taken from Ardes Langhorne and not from her husband. The trial court was further informed that the results of a handwriting analysis between Ardes Langhorne's handwriting exemplar and the pager number written on the paper had proven inconclusive. Langhorne contends that, even if the court properly

allowed the evidence of the pager and the piece of paper bearing the pager number into evidence, the statement by his wife to the police officer that she wrote the number was admissible as a declaration against penal interest. Langhorne further contends that the fact that the police took a writing sample from her and not from him and the inconclusive results of the handwriting comparison were admissible because they, too, were relevant to show that she had not been excluded as the author. Langhorne contends that his wife's statement was admissible to refute the Commonwealth's evidence that he wrote the number of the pager on the paper.

■ We hold that the trial court did not err by admitting the testimony of the arresting officer that he seized two pagers from Langhorne's nightstand and the testimony that Langhorne had written the number for one pager on a piece of paper which he had given to Sutton. "Evidence is relevant in the trial of a case if it has any tendency to establish a fact which is properly at issue." *Wise v. Commonwealth*, 6 Va. App. 178, 187, 367 S.E.2d 197, 202 (1988) (citations omitted). Evidence of the pagers was relevant as a circumstance tending to prove that Langhorne was involved in an ongoing relationship with Sutton to distribute drugs, which was material to establishing a drug distribution conspiracy. In addition, both Sutton and Detective Davis testified that, at the conclusion of the heroin transaction, Aaron Langhorne handed Sutton a piece of paper with his pager number and gave Sutton a special code so he could "keep in touch." Sutton testified that when he phoned the pager number and left his code, Aaron Langhorne returned his call. The evidence of the seizure of the pager, therefore, explained and corroborated this relevant testimony that Sutton and Langhorne used the pager for ongoing drug transactions.

■ We further hold that the court did not err in excluding the testimony of a police officer that Ardes Langhorne had admitted to the police that she wrote the number of the pager on the piece of paper which her husband had given to Sutton. The evidence was hearsay. Langhorne contends that it is admissible as a declaration against penal interest. However, we hold that the statement does not fall within a recognized hearsay exception. The Commonwealth relies on *Ellison v. Commonwealth*, 219 Va. 404, 247 S.E.2d 685 (1978), for the proposition that, "while a declaration against penal interest is recognized as an exception to the hearsay

rule, such a declaration made out of court by a dead *or otherwise unavailable witness* is admissible only upon a showing that the declaration is reliable." *Id.* at 408, 247 S.E.2d at 688 (emphasis added). Langhorne did not establish that Ardes Langhorne was unavailable. She had been convicted for her role in these drug transactions and, insofar as the record reflects, was available to testify. Her statement was "hearsay and the third-party declaration against penal interest exception was not applicable." *Scaggs v. Commonwealth*, 5 Va. App. 1, 5, 359 S.E.2d 830, 832 (1987). Moreover, without evidence in the record that Ardes Langhorne wrote the pager number on the paper, the fact that the police obtained a writing exemplar from her, and not from her husband, and the fact that the results of the handwriting comparison were inconclusive become irrelevant.

Furthermore, Ardes Langhorne's statement that she, rather than her husband, wrote the number had such minimal probative value that its exclusion, even had it been error, was harmless. The unrefuted evidence showed that Aaron Langhorne gave the paper with the pager number to Sutton at the completion of the heroin transaction and that Sutton later called the number and was able to contact Langhorne. The inconclusive test results would merely show that Ardes Langhorne may have written the number. This information does not tend to exonerate Aaron Langhorne from his involvement in the heroin transaction in light of the other evidence against him. While the information may have provided the jury with the opportunity to question the credibility of Sutton and Detective Davis, this conclusion is speculative at best and is insufficient to render the evidence admissible, since the jurors had ample other opportunity to analyze credibility throughout the trial.

The admission of evidence is left to the sound discretion of the trial court and will be disturbed on appeal only upon a showing of abuse of discretion. *Blain v. Commonwealth*, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). In summary, the trial court did not abuse its discretion by admitting the evidence which was probative of Langhorne's method of conducting the drug transactions, nor did it err by excluding the hearsay evidence or evidence which had no probative value. We, therefore, find no error in the court's ruling.

## III. *BATSON* CHALLENGE

The Commonwealth used all four of its peremptory challenges to eliminate black members of the jury panel. The Commonwealth's attorney offered race-neutral explanations for those strikes. Langhorne takes no issue with three of the strikes: two of the persons had criminal records, and the third had a brother with criminal charges pending against him involving Detective Carter, a narcotics investigator who would be testifying in Langhorne's case. Langhorne claims, however, that the Commonwealth's reason for striking the fourth member of the panel was too nebulous to overcome the presumption from *Batson v. Kentucky*, 476 U.S. 79 (1986), that the strike was racially motivated. We disagree.

■ "For purposes of this appeal we assume, without deciding, that [Langhorne] made out a *prima facie* case of purposeful discrimination by the Commonwealth." *Taitano v. Commonwealth*, 4 Va. App. 342, 347, 358 S.E.2d 590, 592 (1987) (footnote omitted). The burden was, therefore, on the Commonwealth to articulate a racially neutral explanation "clear, reasonably specific, and related to the particular case to be tried." *Jackson v. Commonwealth*, 8 Va. App. 176, 185, 380 S.E.2d 1, 6, *aff'd en banc*, 9 Va. App. 169, 384 S.E.2d 343 (1989). The prosecutor explained that he struck juror Moseley because Detective Carter, who had been investigating drug offenses in the Richmond area for over fifteen years, stated that Moseley looked familiar to him, although he could not quite place him.

> *Batson* requires the trial judge to evaluate the credibility of the asserted reasons based upon the totality of the circumstances of the case, as reflected in the record. . . . Moreover, "[t]he explanation offered for striking each black juror must be evaluated in light of the explanations offered for the prosecutor's other peremptory strikes."

*Jackson*, 8 Va. App. at 185, 380 S.E.2d at 6 (citation omitted). It is apparent that the Commonwealth's attorney was offering as his explanation to the trial court that he struck the juror because the narcotics detective of fifteen years thought he recognized Moseley; he was concerned or apprehensive that, because of some contact that the juror may have had with law enforcement, the juror should be stricken from the panel. Trial judges must scrutinize such nebulous explanations to be satisfied that the prosecutor is

not using the stated reason as a subterfuge to deny an accused a jury comprised of a racially balanced cross-section of the community. However, a peremptory challenge does not have to be based on a showing of actual bias; so long as the reason is in good faith and not motivated by race, the challenge is not constitutionally improper. The trial court accepted the explanation that the peremptory strike was not based upon racial considerations, but rather upon a valid concern raised by an officer in the case. We hold the trial court did not err in finding no purposeful racial discrimination.

## IV.  SUFFICIENCY OF THE EVIDENCE

■ When the sufficiency of the evidence to sustain a criminal conviction is challenged on appeal, the evidence must be viewed in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom, and the jury's verdict will not be disturbed unless it is plainly wrong or without evidence to support it. *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted). The jury's verdicts against Langhorne are fully supported by the evidence. For this reason, and the reasons previously stated, the judgment of the trial court is therefore affirmed.

*Affirmed.*

Baker, J., and Benton, J., concurred.