COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Lemons[*] and Frank
Argued at Chesapeake, Virginia


ELTON MANNING JACKSON
                                        MEMORANDUM OPINION[**] BY
v.    Record No. 2587-98-1            JUDGE ROBERT P. FRANK
                                           SEPTEMBER 5, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                     James A. Cales, Jr., Judge

          Dianne G. Ringer, Senior Assistant Public
          Defender, for appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Elton Manning Jackson (appellant) appeals his conviction, by

a jury, of first degree murder.  On appeal, he contends the trial

court erred in:  1) allowing three witnesses to testify regarding

their sexual encounters with him; 2) overruling his motion to

exclude a portion of the statement he made to police regarding his

sexual encounter with Kevin Benton; and 3) allowing a witness to

testify about the statement Andre Smith made to the witness.  We

disagree and, therefore, affirm the trial court's judgment.

_____

        [*] Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

        [**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.  BACKGROUND

On July 22, 1996, the body of Andre Smith was found at approximately 8:35 a.m.  The medical examiner testified the victim had been dead at least 18 to 24 hours, but no longer than 48 hours.  The cause of death was ligature strangulation.

Arnold Smith, a friend of the victim, testified, over appellant's objection, that between 2:30 a.m. and 3:00 a.m. on July 21, 1996, the victim said he was going to go "past" appellant's house to get some money.  Kim Nurney also testified, without objection, that at around 2:30 a.m. on July 21, 1996, the victim told her he was leaving to go get some money and would be back in fifteen minutes.  Nurney waited for the victim, but he never returned.

On July 23, 1996, during a canvas of the victim's neighborhood, police officers came in contact with appellant. Appellant told the police he did not know the victim, but recognized his picture from television reports.  Detective Ronald Young testified appellant appeared jittery and would not make good eye contact with the police.

Appellant was arrested on May 6, 1997, and gave a videotaped statement to Detective Whitehurst of the Chesapeake Police Department.  During this videotaped statement, he stated the victim had visited his home some time in the evening on July 20, 1996, and the two of them "had a good time."  Whitehurst also questioned appellant about a sexual encounter he had with

-

Kevin Benton.  Specifically, Whitehurst asked appellant if he played a game with Benton where he tied up Benton.

At trial, appellant testified he engaged in anal sex with the victim on July 20, 1996.  Appellant said he gave the victim twenty dollars, and the victim left around 10:00 p.m.

Kevin Benton testified about a sexual encounter he had with appellant in the early morning hours of December 11, 1996. Appellant picked Benton up in the Ocean View area of Norfolk, and Benton testified they went to appellant's house.  Once they arrived at appellant's house, Benton, who was high on crack cocaine, went into the bedroom with appellant.  Appellant promised to give Benton seventy-five dollars if he would allow appellant to tie his hands behind his back and massage him. Benton stripped to his boxer shorts and lay on his stomach on the bed while appellant tied his hands behind his back with a necktie.  After a few moments, during which appellant was out of Benton's sight, Benton noticed appellant approaching from behind.  Appellant tried to lift a leather strap over Benton's head.  Benton turned away, kicked appellant, and untied the necktie around his hands.  Later that morning, appellant paid Benton nineteen dollars and some change.  Appellant then drove Benton to a meeting with Benton's probation officer.  Appellant testified he engaged in consensual sex with Benton, but denied any acts of violence.

-

Tommy Anderson testified he and appellant agreed to exchange sex for money in May 1995. Anderson testified he went to appellant's house, took off his clothes, and lay on the bed. Anderson agreed to let appellant rub lotion between his closed legs. At this point, appellant became rough and held Anderson down by placing his forearm in the back of Anderson's neck, but he stopped when Anderson threatened to scream. Then, appellant agreed to drive Anderson to his next destination, but, while in the car, he hit Anderson in the face. Appellant threatened to kill Anderson if he tried to escape. Appellant drove Anderson to the approximate area where the victim's body was found. He ordered Anderson to get out and place his hands on the vehicle. With his hands on the vehicle, Anderson turned and saw appellant approaching him from behind with a strap in his hand. Anderson kicked appellant and fled the area. During his testimony, appellant denied ever having a sexual encounter with Anderson.

Willie C. Swimpson, Jr., lived with appellant during the summer of 1995. Swimpson testified he engaged in sexual relations with appellant for money during that time. On one occasion, appellant took Swimpson to a secluded area and Swimpson agreed to allow appellant to put lotion between his legs while having sex with him. Swimpson glanced around while he waited for appellant to retrieve the lotion and noticed appellant approaching him from behind with a strap in his hand. Swimpson thought appellant was going to put the strap around his

-

head and twist it. Swimpson escaped through the woods on foot. Appellant testified Swimpson fabricated this story because their consensual sexual relationship had ended on bad terms after he caught Swimpson stealing from him.

A bloodstain found on appellant's mattress matched the DNA of the victim. Appellant's DNA matched the DNA in semen that was swabbed from the victim's anus.

Appellant was convicted on August 21, 1998 of murder in the first degree. He was sentenced to life imprisonment on October 27, 1998.

## II. ANALYSIS

Appellant contends the trial court erred in allowing Benton, Anderson, and Swimpson to testify about their sexual encounters with him, during which each said appellant tried to strangle him.

> Generally, evidence of other offenses should be excluded if offered merely to show that the accused is a person likely to commit the crime charged. But there are important exceptions to that rule. Evidence of other crimes is admissible if it tends to prove any fact in issue, even though it also tends to show the defendant guilty of another crime.

Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990) (citations omitted).

"[O]ne of the issues upon which 'other crimes' evidence may be admitted is that of the perpetrator's identity, or criminal agency, where that has been disputed. Proof of modus operandi

-

is competent evidence where there is a disputed issue of identity."  Id. (citations omitted).

In Spencer, the Supreme Court explained the standard of proof for the modus operandi exception:

> [E]vidence of other crimes, to qualify for admission as proof of modus operandi, need not bear such an exact resemblance to the crime on trial as to constitute a "signature."  Rather, it is sufficient if the other crimes bear "a singular strong resemblance to the pattern of the offense charged."  That test is met where the other incidents are "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof," thus tending to establish the probability of a common perpetrator.
>
> Ultimately, the question whether to admit evidence of other crimes involves the same considerations as any other circumstantial evidence.  "Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted."  "Other crimes" evidence bearing sufficient marks of similarity to the case on trial to establish the probability of a common perpetrator is, therefore, usually relevant.  The question remains, however, whether it is "otherwise admissible."  That question requires the trial court to weigh its probative value against its prejudicial effect.  "Whenever the legitimate probative value outweighs the incidental prejudice to the accused, evidence of prior offenses, if otherwise competent, is admissible."
>
> The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.  The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse.

Id. at 90, 393 S.E.2d at 616-17 (citations omitted).

-

Appellant contends the differences between his encounters with Benton, Anderson, and Swimpson and his encounter with the victim were not sufficient to show a modus operandi. He argues Benton, Anderson, and Swimpson agreed to have sex with him for money, but there was no evidence he paid the victim to have sex with him. He argues Benton and Anderson testified, that before taking them back to his house, he picked them up in his car while cruising the streets. He contends there was no evidence that he picked up the victim while driving in his car. He argues that Swimpson testified appellant attempted to strangle Swimpson in his car, not in his bed, where the Commonwealth contends appellant strangled the victim. Benton testified he allowed appellant to tie him up prior to the attempted strangulation, but the medical examiner testified there was no evidence of tie marks or ligature marks on the victim's wrists or ankles. Appellant also argues there was no evidence he engaged in anal intercourse with Benton, Anderson, or Swimpson. However, the autopsy of the victim indicated appellant penetrated the victim's anus. Anderson and Swimpson both testified appellant wanted to use lotion on their legs, and the medical examiner testified there was no evidence of lotion on the victim's body. Benton, Anderson, and Swimpson each testified he physically resisted appellant when appellant attempted to strangle him. Anderson testified appellant punched him in the face. Appellant notes there were no signs of

-

resistance or defensive wounds found on the victim's body. Benton, Anderson, and Swimpson each testified appellant used a thick, leathery strap. According to the medical examiner, the victim was strangled with a thin cord.

Despite the differences discussed by appellant, we find there are significant similarities between appellant's encounters with Benton, Anderson, and Swimpson and his encounter with the victim. First, all of the men, including the victim, engaged in consensual homosexual sex with appellant. Benton, Anderson, and Swimpson all stated they were using drugs at the time of their encounters with appellant. The victim's post-mortem toxicology report indicated cocaine was present in his body. Despite appellant's assertion that he did not pay the victim to have sex with him, the victim told Arnold Smith and Nurney he needed money, then he had sex with appellant, and appellant gave him twenty dollars. Finally, appellant engaged in rough sex with Benton, Anderson, and Swimpson. Benton stated he was face down on the bed with his hands tied behind his back when appellant put a strap over his head from behind. Anderson said appellant started getting rough during their encounter and appellant pinned him down on the bed by the back of the neck. Later, appellant came at Anderson with a strap or rope. Swimpson stated that during a sexual encounter with appellant, appellant tried to put a leather strap around his neck. The

victim clearly had engaged in sexual intercourse with appellant and was strangled from behind with a thin cord.

We find appellant's encounters with Benton, Anderson, and Swimpson and the circumstances surrounding the victim's death to be "sufficiently idiosyncratic and similar to each other to support an inference of a pattern of operation and the probability of [a] common [perpetrator]." Chichester v. Commonwealth, 248 Va. 311, 328, 448 S.E.2d 638, 649 (1994). Furthermore, we find the trial court did not abuse its discretion in concluding the prejudicial effect of Benton's, Anderson's, and Swimpson's testimony was outweighed by the probative value of the evidence.

Appellant next contends the trial court erred in admitting the portion of his May 6, 1997 statement to police that related to his sexual encounter with Benton.

The Commonwealth argues appellant is procedurally barred from raising this issue on appeal because, pursuant to Rule 5A:18, he did not state a specific basis for his objection. We disagree and address the issue on the merits.

In his brief, appellant only argues that the portion of his statement to the police regarding his relationship with Benton is inadmissible for the "same reasons [as] all of Benton's testimony." As discussed above, Benton's testimony was admissible to prove modus operandi.

-

"The admission of evidence is left to the sound discretion of the trial court and will be disturbed on appeal only upon a showing of abuse of discretion." Langhorne v. Commonwealth, 13 Va. App. 97, 106, 409 S.E.2d 476, 482 (1991) (citing Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted)).

"Evidence is relevant if it has any logical tendency to prove an issue in a case." Goins v. Commonwealth, 251 Va. 442, 461, 470 S.E.2d 114, 127 (1996) (citing Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)).

In this case, appellant's statement to the police regarding his relationship with Benton was relevant because it corroborated Benton's admissible testimony. Therefore, we find the trial court did not abuse its discretion in admitting appellant's statement into evidence.

Finally, appellant contends the trial court erred in allowing Arnold Smith to testify about the victim's statement that he was going to appellant's house.

The trial court ruled Smith's testimony was hearsay, but ruled it was admissible, over appellant's objection, to show the victim's state of mind. The Commonwealth argued the victim's state of mind was relevant because it corroborated the Commonwealth's contention that he went to appellant's house.

Assuming, without deciding, the statement was hearsay, it was harmless error for the trial court to admit the statement.

-

> A nonconstitutional error is harmless if "it plainly appears from the record and the evidence given at trial that the error did not affect the verdict." "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that had the error not occurred, the verdict would have been the same."

Scott v. Commonwealth, 18 Va. App. 692, 695, 446 S.E.2d 619, 620 (1994) (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc)).

From Smith's testimony, the trier of fact could conclude the victim knew where appellant's house was located and the victim planned to go "past" appellant's house to get money. Smith did not testify as to the time the victim left because he left prior to the victim's leaving. Nurney established the victim left at 2:30 a.m. and did not return. The victim told Nurney he was going to get some money and would return in fifteen minutes. Nurney's testimony did not indicate the victim knew appellant or was going to appellant's home.

Substantively, the inadmissible hearsay adds nothing to the evidence already before the trier of fact. Appellant admitted he and the victim had sex at his home on the evening of July 20, 1996. From appellant's testimony, the trier of fact could infer the victim knew where appellant's home was located. Therefore, we find, had the hearsay not been admitted, the verdict would have been the same.

-

For these reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>