COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, O'Brien and Raphael

MICHAEL EARL FERGUSON

v.    Record No. 0652-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
APRIL 5, 2022

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

(J. Thomas Love, Jr; Office of the Public Defender, on brief), for
appellant.

(Mark R. Herring,[1] Attorney General; Virginia B. Theisen, Senior
Assistant Attorney General, on brief), for appellee.


The trial court convicted Michael Earl Ferguson of maliciously shooting a firearm at an

occupied building, in violation of Code § 18.2-279, as well as possession of a firearm by a felon,

in violation of Code § 18.2-308.2.  On appeal, Ferguson claims that the evidence failed to prove

that he possessed a firearm or that he was the shooter.[2]  Because there was ample evidence from

which the trial court could find Ferguson guilty of both charges, we affirm his convictions.

Indeed, after examining the briefs and this record, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);

Rule 5A:27(a).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] Ferguson's status as a convicted felon is undisputed.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, "we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Massie v. Commonwealth*, 74 Va. App. 309, 315 (2022).

Around 9:00 p.m. on May 20, 2020, Gary Ayers, Fred Ayers, Jr., and Fred Ayers, Sr. were at their house—Fred Jr. lying on his bed, Gary watching YouTube, and Fred Sr. sleeping in his basement bedroom. Someone knocked on the front door.

Fred Jr. looked out his bedroom window and saw Ferguson standing at the door under the porch light. Fred Jr. had a clear view of Ferguson's face. Fred Jr. recognized Ferguson because he had known him for about ten years. Ferguson had lived in the home when married to Fred Sr.'s stepdaughter. Fred Jr. testified that Ferguson was wearing a gray shirt. Ferguson "looked mad" but Fred Jr. "didn't think anything of it" because Ferguson "usually always looks mad." Fred Jr. laid back in bed.

Gary opened the front door and he, too, immediately recognized Ferguson. He was "100 percent sure" it was Ferguson. There was no one else on the porch. Ferguson wore a gray shirt and blue jeans, a holster strapped to his hip. Like Fred Jr., Gary testified that Ferguson "looked angry." In a "mean voice," Ferguson asked Gary what he was doing. Sensing something bad was about to unfold, Gary told Ferguson he would let him in after securing the dogs. But Gary locked the door instead. Ferguson yelled for Gary to open "the f-ing door," threatening "to shoot through it." Gary went to Fred Jr.'s bedroom and told him that Ferguson was threatening to shoot.

As Gary and Fred Jr. returned to the front of the house, a gunshot rang out and a bullet penetrated the storm door, the front door, and the wall behind it, lodging in the bathroom door. Gary and Fred Jr. dropped to the floor. Fred Sr. heard the shot from the basement. Gary thought he "was about to die." Fred Jr. at first thought that Gary had been hit. Ferguson left the scene.

About ten minutes later, Officer G.P. Whorley arrived at the house. He interviewed Gary and Fred Sr. Gary confidently identified Ferguson as the gunman.

After obtaining an arrest warrant that night, the police searched for Ferguson without success. But two days later, they found him at his primary residence. Ferguson's girlfriend answered the door and allowed the police to enter. After Ferguson failed to respond when they called out, the officers searched the residence and found him hiding in the bathroom, behind a shower curtain.

At trial, Ferguson called two alibi witnesses and testified in his own defense. Brittany Emmons, the wife of Ferguson's cousin, claimed that Ferguson often visited her apartment in Rocky Mount, sometimes every day. She said that even though May 20, 2020 was "just another day," she recalled that Ferguson and his ex-wife Heather visited her that day. When asked how she recalled Ferguson was at her apartment specifically on May 20, Emmons answered, "He was at my house all the time. It [doesn't] have to be a specific date." She claimed that Ferguson stayed overnight and was there the whole time.

On cross-examination, Emmons admitted that she did not come forward to the authorities after Ferguson was arrested for the shooting. Doing so never crossed her mind, she said, even though she "wasn't okay" with him "just sitting in jail." Emmons first denied that she had been convicted of a crime involving lying, cheating, or stealing but then admitted to an embezzlement conviction in 2014.

Ferguson next called his cousin, Matthew Jackson, who had been convicted of multiple felonies. Jackson testified that he saw Ferguson about three or four times a week, including in May 2020. Jackson claimed that Ferguson visited his house on May 20, specifically remembering that day because Ferguson's ex-wife was there too. Jackson claimed that Ferguson arrived around noon and did not leave until the next morning.

For his part, Ferguson testified that the last time he saw anyone from the Ayers family was in September or November 2019. He claimed that he was in Rocky Mount with Jackson on May 20, 2020. He was certain because that was the day "you're trying to say that I shot at somebody." Ferguson denied owning or carrying a firearm. When asked why he hid in the bathroom when the police came to his home, he responded, "Why wouldn't I?" He had learned from another cousin that the police were looking for him, so he hid there "to get away." Ferguson admitted to having been convicted of many felonies.

The trial court convicted Ferguson of both charges. The court found the Commonwealth's witnesses credible and, by contrast, found credibility lacking for "all of the defense witnesses because of their convictions and because of their family relation to [Ferguson]." For the malicious-shooting conviction, the court sentenced Ferguson to five years in prison, with four years suspended; and for the felon-in-possession conviction, three years in prison with time suspended after serving the two-year mandatory minimum. The court ordered the sentences to be served consecutively and ordered supervised probation after release from prison.

ANALYSIS

Ferguson argues that the evidence was insufficient to convict him because the prosecution failed to prove that he possessed a firearm or that he was the shooter. He claims that Gary and Fred Jr. misidentified him because it was dark that night and they only briefly saw the

perpetrator. And he argues that Emmons and Jackson both testified that he was in Rocky Mount when the crime occurred, not Roanoke.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, we ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). "The factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), are used to determine 'whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt' the identity of the perpetrator." *Id.* (quoting *Brown v. Commonwealth*, 37 Va. App. 507, 522 (2002)). Among the "factors to be considered in evaluating the likelihood of misidentification" are the witness' "opportunity . . . to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time

between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200. By contrast, "[t]he burden of establishing [an] alibi is on the defendant." *Marlowe v. Commonwealth*, 2 Va. App. 619, 624 (1986). "That burden is met if the alibi, when considered with the whole evidence, raises a reasonable doubt about the defendant's presence at the crime." *Id.*

There was sufficient evidence under *Biggers* for the court to conclude that Ferguson was the perpetrator. Both Gary and Fred Jr. testified that they saw Ferguson as he stood under the porch light. Both witnesses had known Ferguson for years, as he had been married to their father's stepdaughter and had lived with the family for a time. *Cf. Ray v. Commonwealth*, 74 Va. App. 291, 303-04 (2022) (contrasting identification of a "total stranger" with identification of a perpetrator known by a witness for "two or three years"). Ferguson wore nothing to obscure his face, and Gary stood within feet of Ferguson and spoke with him through the open front door. *See Blevins*, 40 Va. App. at 425 (holding that a witness "had ample opportunity to view the" perpetrator because "the parking garage was 'bright' and 'well lit'" and "he had a 'real good' 'unobstructed view' of the assailant from a distance of ten to fifteen feet for four to five seconds"). Gary and Fred Jr. also provided corroborating descriptions of Ferguson's clothing—a gray shirt and blue jeans—showing their attention to detail. And they both saw him well enough to realize that he was angry.

Ferguson also incriminated himself by hiding in his bathroom when the police came to find him. "[I]t is universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991)). By his own admission, Ferguson engaged in such concealment to avoid capture—he hid behind the shower curtain "to get away" when the police arrived at the house.

We disagree with Ferguson that the trial court erred by not crediting his alibi or his alibi witnesses. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). Credibility determinations often include "choosing between competing accounts offered by different witnesses." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011). The fact finder is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Smith v. Commonwealth*, 72 Va. App. 523, 537 n.4 (2020) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (*en banc*)). The fact finder may also reject a defendant's "self-serving testimony" and "conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

The trial court here could properly find that the alibi testimony from Ferguson, Emmons, and Jackson was not credible. Ferguson's testimony could be rejected as self-serving. What is more, each witness was impeached with their prior convictions. And all three were contradicted by the weight of the Commonwealth's evidence. That evidence included Gary and Fred Jr.'s unequivocal identification of Ferguson on the well-lit porch, where he threatened to shoot through the door just seconds before the bullet penetrated the home. After weighing the competing accounts offered by the witnesses, the court credited the Commonwealth's witnesses and rejected Ferguson's alibi. There is simply no basis to find that credibility determination to be plainly wrong or without evidence to support it.

CONCLUSION

Because the Commonwealth's evidence was competent, not inherently incredible, and sufficient to enable a reasonable trier of fact to find Ferguson guilty beyond a reasonable doubt, we cannot set aside either conviction.

*Affirmed.*