COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Athey
Argued at Fredericksburg, Virginia

UNPUBLISHED

ADONAY POLANCO CABRERA

v.      Record No. 1038-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
JULY 11, 2023

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

(John W. Pickett; Pickett Law Group, PLLC, on brief), for appellant.
Appellant submitting on brief.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, Adonay Polanco Cabrera was convicted of first-degree murder, statutory burglary, and grand larceny.[1]  On appeal, Polanco Cabrera contends that the trial court erred in admitting evidence that he fled to El Salvador following the murder and in admitting into evidence autopsy and crime scene photos of the victim.  He also contends that the trial court erred in denying his motion to strike for failing to prove the offense date alleged in the indictment and in denying his motion to strike based on the insufficiency of the evidence to convict him of murder.

## I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Scott v.*

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] On appeal, Polanco Cabrera does not challenge his convictions for statutory burglary or for grand larceny.

*Commonwealth*, 292 Va. 380, 381 (2016). As the Supreme Court has stated, "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

In November 2016, Leif Erick Ohlsson and Polanco Cabrera were engaged in a romantic relationship. In the afternoon of November 22, 2016, Ohlsson picked up Polanco Cabrera and Polanco Cabrera's roommate, Fredy Cisneros Agustin, from their apartment. They first drove to a park and then went out to dinner. After dinner, they purchased beer and cocaine before arriving at Ohlsson's apartment around 11:00 p.m. that evening.

At Ohlsson's apartment, Polanco Cabrera and Cisneros Agustin used cocaine, and all three of them (including Ohlsson) listened to music and drank beer. Cisneros Agustin testified that, when Polanco Cabrera finished the cocaine, Polanco Cabrera asked Ohlsson "for more money to buy more cocaine" and for Ohlsson's car. Ohlsson gave Polanco Cabrera money for the cocaine but refused to let him use the car. According to Cisneros Agustin, Ohlsson's refusal to let Polanco Cabrera use the car made Polanco Cabrera angry, and Polanco Cabrera told Cisneros Agustin, "I think I'm going to kill this old man."

Soon thereafter, Cisneros Agustin went to use the bathroom. He testified that, while he was in the bathroom, he heard Ohlsson yell, "No, Adonay, no, Adonay, please, no, please, no." When Cisneros Agustin exited the bathroom, he saw Ohlsson on the floor and Polanco Cabrera using a shoelace to strangle Ohlsson. Polanco Cabrera had braced his foot against the back of Ohlsson's neck and was pulling the shoelace tight around his neck. Ohlsson's face was purple, and blood hemorrhaged from his mouth. When Cisneros Agustin asked Polanco Cabrera what he had done, Polanco Cabrera responded, "I killed him." Cisneros Agustin testified that

Polanco Cabrera instructed him to drop a nearby marble bust onto Ohlsson's body. Cisneros Agustin complied, dropping the marble bust on Ohlsson's head.

Cisneros Agustin testified that he and Polanco Cabrera then left Ohlsson's apartment around 12:00 a.m. or 12:30 a.m. on November 23, 2016. Before they left, they took a safe, several paintings, and Ohlsson's car keys.[2] They then called Jose Perez Amaya and Gabriel Coca, and the four of them went to a park and opened the stolen safe. The four men returned to Polanco Cabrera's apartment and divided the stolen items. Polanco Cabrera gave Cisneros Agustin two watches that were taken from the safe. Then, around 5:00 a.m., Polanco Cabrera and his friends returned to Ohlsson's apartment to steal a carpet and some more paintings. Apartment security cameras recorded them entering the building and departing with Ohlsson's property.

The next day, November 24, 2016, Cisneros Agustin called the police to report Ohlsson's murder. Fairfax County police officers Brian McCarthy and Mario Colorado responded to the call and spoke with Cisneros Agustin. Both officers testified that, during their initial interactions with him, Cisneros Agustin "appeared intoxicated." Cisneros Agustin handed over the watches stolen from Ohlsson's safe and told the officers that he had been drinking with friends two days prior during which "a shoelace was used to kill the American." Cisneros Agustin initially claimed that they had "accidentally" killed the man after the man had made a derogatory comment about Hispanics and that they left his body on a table. During a police interview with Detective John Long, Cisneros Agustin explained that Polanco Cabrera had strangled Ohlsson with a shoelace.

---

[2] Security cameras recorded Polanco Cabrera and Cisneros Agustin leaving the apartment complex with the items they stole from Ohlsson's apartment.

Based on the information provided by Cisneros Agustin, police searched both Ohlsson's apartment and the apartment that Cisneros Agustin shared with Polanco Cabrera. In Ohlsson's apartment, police found Ohlsson's body covered by a bolt of fabric and lying face-down on the floor in the hallway between the bathroom and the study. A marble bust lay beside Ohlsson's head. They also noticed that there were "some empty spots" on the wall "where perhaps picture frames were missing." When police searched Polanco Cabrera's apartment, they found some of the stolen picture frames and paintings in Polanco Cabrera's sleeping area.

Police arrested Cisneros Agustin late on November 24, 2016. Perez Amaya and Coca were also arrested around this time. Fairfax County police were unable to arrest Polanco Cabrera because he fled to El Salvador shortly after the murder. On December 14, 2017, a grand jury indicted Polanco Cabrera for the murder of Leif Erick Ohlsson "[o]n or about the 23rd day of November, 2016," for statutory burglary, and for grand larceny. In 2020, El Salvador extradited Polanco Cabrera to the United States.

During an August 18, 2020 police interview, Polanco Cabrera admitted that he, Cisneros Agustin, and Ohlsson were in Ohlsson's apartment on the night of Ohlsson's murder. He also admitted that he participated in taking the safe and paintings from Ohlsson's apartment, that they took Ohlsson's car, that they went to a park to try to open the safe, and that he got scared so he fled to El Salvador. He denied killing Ohlsson, instead claiming that, on the night of the incident, he received a phone call from Sandra Chavez and went out on the balcony to talk to her. When he returned inside the apartment, he found Ohlsson dead on the floor. However, at trial, Chavez testified that she did not remember speaking with Polanco Cabrera at all during the month of November 2016.

At trial, Cisneros Agustin testified against Polanco Cabrera under a cooperation agreement with the Commonwealth.[3]  He admitted that he struck Ohlsson with the bust but maintained that he feared that Polanco Cabrera would kill him if he did not do so.  On cross-examination, Cisneros Agustin acknowledged that, over the course of the approximately five years between the murder and Polanco Cabrera's trial, his statements about the details of the murder may have had some discrepancies, but he explained that he was heavily intoxicated during the incident and could not recall all the details.  He also acknowledged that he previously sought to withdraw his guilty pleas and accused his court-appointed attorney of forcing him to plead guilty.  However, he maintained that his testimony at trial was true.

Dr. Meghan Kessler, an expert in forensic pathology, testified at trial that Ohlsson died from strangulation and from blunt force injuries to his head.  Dr. Kessler opined that Ohlsson sustained "blunt force" injuries behind his right ear.  He also had "petechial hemorrhages" and an "abrasion impression around his neck" from "a probable ligature," which Dr. Kessler further testified were consistent with "strangulation by a shoelace."[4]  According to Dr. Kessler, Ohlsson was alive when he was strangled and when he suffered the blunt force injuries.

At the conclusion of the trial, the jury convicted Polanco Cabrera of first-degree murder, statutory burglary, and grand larceny.  The trial court sentenced him to life imprisonment.  Polanco Cabrera now appeals to this Court.

---

[3] Cisneros Agustin acknowledged at trial that he had pled guilty to first-degree murder and grand larceny under a plea agreement that limited his possible active sentence to 40 years of incarceration, provided that he "fully and truthfully cooperat[ed] in the investigation and prosecution of any and all co-Defendants in this case," including Polanco Cabrera.

[4] Autopsy photographs clearly show a ligature mark around Ohlsson's neck.

## II. ANALYSIS

### A. Admissibility of the Evidence

An appellate court reviews a trial court's decision to admit certain evidence for an abuse of discretion. *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) ("Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006))). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009).

#### 1. *Admissibility of Evidence of Polanco Cabrera's Flight to El Salvador*

In his first assignment of error, Polanco Cabrera contends that "[t]he trial court erred by allowing admission of evidence of the Appellant's flight where the probative value of the evidence was clearly outweighed by the prejudicial effect." Generally, evidence of an accused's "[f]light following the commission of a crime is evidence of guilt, and the jury may be so instructed." *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002) (quoting *Clagett v. Commonwealth*, 252 Va. 79, 93 (1996)). "Evidence of flight from authorities that occurred days, or even months, after a crime is admissible, as '[a]ny flight at a time when it may be to avoid arrest, prosecution, or confinement tends to show a consciousness of guilt.'" *Id.* (alteration in original) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 103 (1991)). Notably, "introduction of evidence of flight *does not depend* upon issuance of a warrant" or the defendant speaking with law enforcement about the crime before fleeing. *Id.* (emphasis added). Instead, "to show a 'consciousness of guilt,' a nexus must exist between the flight and the alleged offense." *Id.* Thus, "[t]he evidence must establish appellant had some knowledge that he might be a suspect in the killing." *Id.*

During his police interview in 2020, Polanco Cabrera admitted that he was present at Ohlsson's apartment during the violent murder of Ohlsson (who had been his lover), that he stole valuable items from the deceased, and that he took Ohlsson's car. Furthermore, in that same interview, Polanco Cabrera actually admitted that he fled to El Salvador after the murder because he was scared. This admission, taken in conjunction with his knowledge of the crime and his presence at the scene of the crime, certainly supports the conclusion that Polanco Cabrera "had some knowledge that he might be a suspect." *Id.* Indeed, Polanco Cabrera's conduct of quickly fleeing the country after Ohlsson's murder and his later statements to law enforcement tended to prove that "immediately after the killing" of Ohlsson, Polanco Cabrera "sought to avoid any contact with law enforcement officials and the courts." *Lovitt v. Commonwealth*, 260 Va. 497, 513 (2000). Thus, the trial court did not abuse its discretion in balancing the probative value of this evidence against its potential prejudicial effects and in admitting this evidence.

### 2. *Admissibility of Crime Scene and Autopsy Photos*

In his second assignment of error, Polanco Cabrera contends that "[t]he trial court erred by allowing admission of autopsy photos and crime scene photos of the victim's deceased body where the probative value of the evidence was clearly outweighed by the prejudicial effect." Specifically, he argues that the photographs had little probative value because the manner of Ohlsson's death was not in dispute and that the risk of unfair prejudice substantially outweighed the photographs' probative value.

"A defendant's stipulation" regarding "the cause of the victim's death does not allow the [defendant] to sanitize the evidence and thus preclude the Commonwealth from introducing photographs showing the dead victim, even if the pictures may be considered gruesome." *Burnette v. Commonwealth*, 60 Va. App. 462, 485 (2012). Indeed, "[a]ccurate photographs of a crime scene are not rendered inadmissible solely because they are gruesome, and autopsy

- 7 -

photographs of the victim are admissible to show the atrociousness or vileness of a crime." *Teleguz v. Commonwealth*, 273 Va. 458, 482 (2007), *cert. denied*, 552 U.S. 1191 (2008). Although "[s]uch photographs must nevertheless be excluded if their prejudicial effect substantially outweighs their probative value," that "weighing is left to the discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion." *Id.* Furthermore, the Supreme Court has held that such evidence is admissible to establish "motive, intent, method, malice, premeditation and the atrociousness of [the defendant's] crimes." *Orbe v. Commonwealth*, 258 Va. 390, 402 (1999) (alteration in original) (quoting *Chichester v. Commonwealth*, 248 Va. 311, 326 (1994), *cert. denied*, 513 U.S. 1166 (1995)), *cert. denied*, 529 U.S. 1113 (2000).

Here, the Commonwealth was not required to accept Polanco Cabrera's stipulation regarding the cause of Ohlsson's death. *See Burnette*, 60 Va. App. at 485. In addition, the autopsy and crime scene photographs, which depicted the brutality of Ohlsson's murder, were highly probative of Polanco Cabrera's malice and premeditation (two elements of first-degree murder). *See Orbe*, 258 Va. at 402. The photographs also corroborated Cisneros Agustin's account of the incident, rendering the photographs essential to the Commonwealth's case given Polanco Cabrera's attempts to discredit Cisneros Agustin's testimony. Thus, the photographs were highly probative and essential to the Commonwealth's case, and the probative value was not substantially outweighed by any unfair prejudice to Polanco Cabrera. *See Washington v. Commonwealth*, 228 Va. 535, 551 (1984) ("One who creates such a scene may not complain if an accurate depiction of his handiwork later confronts him in court."), *cert. denied*, 471 U.S. 1111 (1985). Consequently, we hold that the trial court did not abuse its discretion in admitting the autopsy and crime scene photographs.

B. Alleged Variance in the Offense Date Specified in the Indictment

In his third assignment of error, Polanco Cabrera contends that "[t]he trial court erred in denying the Appellant's motion to strike where the offense date alleged in the indictment for murder was inconsistent with the date of offense proven at trial." The indictment alleges that Polanco Cabrera murdered Ohlsson "[o]n *or about* the 23rd day of November, 2016." (Emphasis added). The evidence adduced at trial shows that Polanco Cabrera killed Ohlsson sometime between 11:00 p.m. on November 22, 2016 and 12:30 a.m. on November 23, 2016. Thus, the evidence clearly established that Ohlsson was murdered on *or about* November 23, 2016, and no variance or inconsistency between the date alleged in the indictment and the evidence exists. *See Purvy v. Commonwealth*, 59 Va. App. 260, 266 (2011) ("A variance occurs when the criminal pleadings differ from the proof at trial."). Consequently, we hold that the trial court did not err in denying Polanco Cabrera's motion to strike.

C. Sufficiency of the Evidence for First-Degree Murder Conviction

In his fourth assignment of error, Polanco Cabrera contends that "[t]he trial court erred by denying the Appellant's motion to strike the murder offense where the evidence was insufficient as a matter of law." As acknowledged by Polanco Cabrera on brief, Cisneros Agustin's testimony at trial provided direct evidence that Polanco Cabrera strangled Ohlsson on or about November 23, 2016. Furthermore, Cisneros Agustin's testimony established that Polanco Cabrera also instructed Cisneros Agustin to drop a marble bust on Ohlsson. However, Polanco Cabrera argues that Cisneros Agustin's testimony was inherently incredible and, therefore, insufficient to sustain his conviction.

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,'" *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003) (quoting *Jackson v. Virginia*,

443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," *Riner v. Commonwealth*, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *Crowder*, 41 Va. App. at 663 (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Furthermore, as the Supreme Court has often stated, "[t]he trier of fact is the sole judge of the credibility of the witnesses, unless, as a matter of law, the testimony is inherently incredible." *Juniper v. Commonwealth*, 271 Va. 362, 415 (alteration in original) (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999), *cert. denied*, 528 U.S. 1125 (2000)), *cert. denied*, 549 U.S. 960 (2006). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)). The fact that a witness is also a co-defendant "testifying pursuant to a plea agreement involving the present crime" does not render that witness's testimony inherently incredible, *Yates v. Commonwealth*, 4 Va. App. 140, 144 (1987), nor does the fact that a witness may have given inconsistent statements during the investigation of a crime, *Juniper*, 271 Va. at 415. These circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*

The record supports the trial court's ruling that Cisneros Agustin's testimony was not inherently incredible as a matter of law. At trial, Cisneros Agustin testified unequivocally that Polanco Cabrera strangled Ohlsson to death with a shoelace and that, at Polanco Cabrera's

direction, he dropped a marble bust on Ohlsson's head. Physical evidence, including Ohlsson's autopsy and crime scene photographs, corroborated Cisneros Agustin's testimony. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that a witness's testimony was not inherently incredible when it was corroborated by other evidence). Specifically, Dr. Kessler testified that Ohlsson sustained fatal injuries from blunt force injuries and from strangulation. Autopsy photographs show a clearly visible ligature mark about the width of a shoelace, and crime scene photographs show a marble bust lying next to Ohlsson's head.

Although Cisneros Agustin was intoxicated during the incident and provided inconsistent descriptions of the incident to police, the jury was entitled to consider those circumstances in weighing his credibility. *See Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (holding that inconsistencies in a witness's account do not necessarily render his testimony inherently incredible); *see also Burnette v. Commonwealth*, 172 Va. 578, 581-82 (1939) (holding that a witness's intoxication bears on his credibility but does not necessarily render his testimony "unworthy of belief"). Furthermore, Cisneros Agustin's testimony is not rendered inherently incredible simply because he was an accomplice to Ohlsson's murder and testified in hopes of ingratiating himself to the Commonwealth, as it is well-settled that a defendant "may be convicted upon the uncorroborated testimony of an accomplice." *Johnson v. Commonwealth*, 224 Va. 525, 527 (1982); *see also Yates*, 4 Va. App. at 144 (holding that a co-defendant's testimony is not inherently incredible merely because he testified under a plea agreement). Each of the foregoing circumstances was appropriately submitted to and decided by the jury as part of the jury's credibility determination.

In short, the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove that Polanco Cabrera murdered Ohlsson. Consequently, we uphold Polanco Cabrera's conviction for first-degree murder.

## III.  CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed*.