COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Frank and Clements
Argued at Alexandria, Virginia


BOBBY JOE LEONARD

                                              OPINION BY
v.   Record No. 2858-00-4         JUDGE JEAN HARRISON CLEMENTS
                                           NOVEMBER 5, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       Stanley P. Klein, Judge

         James G. Connell, III (Devine & Connell,
         P.L.C., on briefs), for appellant.

         Stephen R. McCullough, Assistant Attorney
         General (Randolph A. Beales, Attorney
         General, on brief), for appellee.


     Bobby Joe Leonard was indicted, tried, and convicted in a

jury trial of rape, in violation of Code § 18.2-61, abduction

with intent to defile, in violation of Code § 18.2-48, and

attempted murder, in violation of Code §§ 18.2-26 and 18.2-32.

On appeal, Leonard contends the trial court erred (1) in

refusing to dismiss his indictment for attempted murder because

the Commonwealth vindictively obtained that indictment after he

refused to accept a plea bargain and plead guilty to the rape

and abduction charges,[1] (2) in admitting evidence of his attempt

to escape from jail because he was not charged with attempted

--------

[1] The Honorable Henry E. Hudson presided over the
proceedings involving Leonard's motion to dismiss the indictment
for attempted murder.

murder at the time of the attempted escape and was being held on two additional charges unrelated to the crimes for which he was tried in this case, and (3) in permitting a sexual assault nurse examiner to offer expert medical testimony regarding the causation of the victim's sexual injuries. For the reasons that follow, we affirm Leonard's convictions.

## I. BACKGROUND

On August 17, 1999, Leonard was arrested and charged with the rape and abduction with intent to defile of S.T. On September 9, 1999, while incarcerated on those and two other unrelated charges—unauthorized use of a vehicle and violation of the terms of his parole—Leonard and another inmate attempted to escape from jail.

Prior to the preliminary hearing in this case, Leonard and the prosecutor engaged in plea negotiations, which failed when Leonard rejected the Commonwealth's offer. On November 9, 1999, after conducting a preliminary hearing, the general district court certified the charges to the grand jury. On November 15, 1999, the grand jury indicted Leonard for rape and abduction with intent to defile.

The case was set for trial on December 21, 1999, and subsequently continued, on the Commonwealth's motion, to January 31, 2000. The Commonwealth indicated at the time that it intended to amend the charges and seek the mandatory life sentence for second-time violent sex offenders provided for in

Code § 18.2-67.5:3.  Leading up to the January 31, 2000

scheduled trial date, the Commonwealth and Leonard conducted

plea negotiations focusing on the possibility of an indictment

under Code § 18.2-67.5:3.  However, because the facts regarding

Leonard's prior conviction revealed that Leonard did not qualify

for the enhanced penalty, the Commonwealth did not pursue such a

course of action.

On January 21, 2000, the Commonwealth and Leonard again

exchanged offers for a possible plea agreement, but those

negotiations also proved unsuccessful.  On January 27, 2000,

Leonard obtained a continuance of the trial to March 1, 2000.

On February 16, 2000, the Commonwealth informed Leonard it

would return to the grand jury to seek an indictment for

attempted murder if a plea agreement could not be reached.[2]

---

[2] At the subsequent pretrial hearing on Leonard's motion to
dismiss the attempted murder indictment, the prosecutor
described this occurrence as follows:

> During this time, counsel [for Leonard]
> and I engaged in some plea negotiations,
> which obviously did not bear fruit for
> either side.  During these times, I told her
> I was intending to indict [Leonard] for
> attempted murder if we were not going to be
> able to come to some sort of agreement.
>
>     *     *     *     *     *     *     *
>
> . . . Because our negotiations did not
> bear fruit, I had indicated to counsel that
> I was going to attempt or probably go
> forward with the attempted murder
> [indictment].

Leonard chose not to plead guilty. Accordingly, on February 22, 2000, the Commonwealth obtained from the first available grand jury an indictment charging Leonard with attempted murder. Leonard does not dispute that the indictment for attempted murder was fully justified by the evidence or that the Commonwealth was in possession of such evidence at the time it obtained the original rape and abduction indictments. Similarly, the Commonwealth does not dispute that Leonard's refusal to plead guilty to the original charges was the reason it sought the indictment for attempted murder.

On February 25, 2000, the trial court, in scheduling the trial on the attempted murder charge, granted Leonard's request to have the trial on the rape and abduction charges continued so that all three charges could be tried together. Trial on the three charges was set for April 5, 2000.

On March 10, 2000, the trial court denied Leonard's motion to dismiss the indictment for attempted murder on the ground of prosecutorial vindictiveness. Finding the Commonwealth's actions were "a free exercise of prosecutorial discretion," the trial court concluded the circumstances of the case did not "rise to the level of a due process violation."

On April 4, 2000, the day before trial was set to commence, the Commonwealth learned that S.T., previously thought to be an adult, was in fact a juvenile. In light of that information, the parties agreed that the rape and abduction with intent to

defile charges were improperly certified from the general district court and that, as a result, the trial court lacked jurisdiction over those charges. Accordingly, the Commonwealth, by agreement of the parties, "nolle prossed" the original rape and abduction with intent to defile charges and obtained new indictments on those charges on April 17, 2000.

On April 28, 2000, the trial court conducted a hearing on Leonard's pretrial motions in limine to exclude (1) evidence of his attempt to escape from jail on September 9, 1999, and (2) expert testimony by the sexual assault nurse examiner on the causation of the victim's sexually related injuries. Denying Leonard's motions, the trial court ruled that such evidence and testimony were properly admissible at trial. Leonard renewed these motions at trial, and, following argument and, in the case of the nurse examiner's testimony, voir dire of the nurse examiner, the trial court again denied the motions.

On July 19, 2000, the trial court granted the motion of Leonard's appointed counsel to withdraw. Leonard, at his own request, proceeded to trial pro se. The court appointed an advisory counsel to assist him at trial, which commenced on July 24, 2000.

At trial, Diane Burkart, the sexual assault nurse examiner who had examined S.T. at the hospital, qualified as an expert witness in the field of "sexual assault nurse examination." She testified that, to a reasonable degree of medical certainty, the

bruises she observed around S.T.'s vaginal opening were caused by "blunt trauma."  She would not expect to see, she further testified, the degree of injury she observed to S.T. "in an [in]experienced consensual intercourse situation."

Testifying on his own behalf at trial, Leonard denied he raped, abducted, or attempted to murder S.T.  On cross-examination, he testified, in response to questioning by the prosecutor, that he did attempt to escape from jail while being held on the rape and abduction charges, because jail "is a horrible place to be" and he was "homesick."

At the close of the evidence at trial, the court instructed the jury, inter alia, that

> if a person leaves the place where a crime
> was committed, or flees to avoid detection,
> apprehension or arrest this creates no
> presumption that the person is guilty of
> having committed the crime.  However, it is
> a circumstance which you may consider along
> with the other evidence.

Following argument and instruction by the court, the jury found Leonard guilty of the three charged crimes.  The jury recommended a sentence of life in prison for the rape, twenty years for the abduction with intent to defile, and ten years for the attempted murder.  By orders entered November 13, 2000, the trial court imposed sentence in accord with the jury's recommendations.  This appeal followed.

II.  PROSECUTORIAL VINDICTIVENESS

Leonard contends the trial court erred in denying his motion to dismiss the indictment for attempted murder because that indictment was impermissibly obtained by the Commonwealth in retaliation for his decision to go to trial rather than accept the prosecutor's proposed plea bargain and plead guilty to the rape and abduction charges.  The Commonwealth's decision to bring the additional charge, Leonard maintains, was motivated by actual vindictiveness, as evidenced by the prosecutor's threat to obtain the indictment for attempted murder if a plea agreement could not be reached and the prosecutor's timing in making that threat and obtaining the additional indictment.  Accordingly, Leonard concludes, the Commonwealth violated his due process rights in obtaining the indictment for attempted murder and the trial court erred in refusing to dismiss it.  We disagree.

"In our system [of justice], so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).  Such discretion is not unlimited, however.  For example, a prosecutor may not punish a defendant for doing "what the law plainly allows him to do" or retaliate against him for relying on his legal rights.  Id. at 363.  Such

punishment or retaliation constitutes "a due process violation of the most basic sort."  Id.  "But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."  Id.

In Bordenkircher, the prosecutor, acting on a threat he made during plea negotiations, obtained an indictment for a crime carrying a mandatory life sentence after the defendant refused to accept the prosecutor's proposed plea bargain and plead guilty to the original charge, which carried a maximum sentence of ten years and was based on the same conduct as the additional charge.  Id. at 358-59.  Although the prosecutor admitted the purpose of his threat to reindict the defendant on the new, more serious charge was to discourage the defendant from exercising his right to a trial, the United States Supreme Court concluded there was no prosecutorial vindictiveness and, thus, no due process violation.  Id. at 365.

In reaching that conclusion, the Supreme Court noted that, "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty."  Id. at 364.  The Supreme Court further noted, in distinguishing the conduct of the prosecutor in the

case before it from that conduct in other cases where

prosecutorial vindictiveness was found to have occurred, that

> [w]hile the prosecutor did not actually
> obtain the [additional] indictment until
> after the plea conferences had ended, his
> intention to do so was clearly expressed at
> the outset of the plea negotiations. [The
> defendant] was thus fully informed of the
> true terms of the offer when he made his
> decision to plead not guilty. This is not a
> situation, therefore, where the prosecutor
> without notice brought an additional and
> more serious charge after plea negotiations
> relating only to the original indictment had
> ended with the defendant's insistence on
> pleading not guilty.

Id. at 360.

Later, in explaining the decision it reached in

Bordenkircher, the United States Supreme Court stated as

follows:

> The outcome in Bordenkircher was
> mandated by this Court's acceptance of plea
> negotiation as a legitimate process. In
> declining to apply a presumption of
> vindictiveness, the Court recognized that
> "additional" charges obtained by a
> prosecutor could not necessarily be
> characterized as an impermissible "penalty."
> Since charges brought in an original
> indictment may be abandoned by the
> prosecutor in the course of plea
> negotiation—in often what is clearly a
> "benefit" to the defendant—changes in the
> charging decision that occur in the context
> of plea negotiation are an inaccurate
> measure of improper prosecutorial
> "vindictiveness." An initial indictment—
> from which the prosecutor embarks on a
> course of plea negotiation—does not
> necessarily define the extent of the
> legitimate interest in prosecution. For
> just as a prosecutor may forgo legitimate

charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

  *   *   *   *   *   *   *

. . . A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in Bordenkircher, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

United States v. Goodwin, 457 U.S. 368, 378-82 (1982) (footnotes omitted).

Bordenkircher and Goodwin make clear, then, "that a prosecutor, in the context of plea negotiations, [may] threaten to bring a more severe indictment against a defendant to pressure him into pleading guilty . . . ." United States v. Williams, 47 F.3d 658, 662 (4th Cir. 1995). Accordingly, "[i]f a prosecutor brings additional charges after a defendant refuses to accept a plea bargain, a court [may not] presume that the additional charges are an impermissible penalty for the defendant's refusal." Id. at 661. The defendant "must show that a prosecutor's decision was motivated by actual vindictiveness." Id. at 662. "A prosecutor's threat to bring a more severe indictment if the defendant refuses to cooperate does not amount to vindictiveness as long as the defendant,

should he refuse to cooperate, is not treated worse than he would have been if no plea bargain had been offered."  Id.

Here, Leonard made no showing that the Commonwealth's decision to obtain the indictment for attempted murder was motivated by actual vindictiveness.  Indeed, the relevant circumstances in this case are nearly identical to those in Bordenkircher.  After obtaining indictments against Leonard for rape and abduction with intent to defile, the Commonwealth informed Leonard, in the course of ongoing pretrial plea negotiations, that it was going to seek an additional indictment against him for attempted murder if a plea agreement could not be reached.  When Leonard refused to accept the Commonwealth's proposed plea bargain and plead guilty to the charges of rape and abduction with intent to defile, the Commonwealth obtained an indictment for attempted murder prior to trial.

It is undisputed that Leonard was legitimately subject to prosecution on the attempted murder charge.  Thus, the Commonwealth could have obtained an indictment on that charge when it obtained the earlier indictments for rape and abduction with intent to defile.  Hence, in obtaining the attempted murder indictment after its initial expectation that Leonard would plead guilty to the rape and abduction charges proved unfounded, the Commonwealth treated Leonard no worse than he would have undoubtedly been treated had no plea bargain been offered.

Furthermore, although, as Leonard points out, the prosecution's intention to seek an additional indictment was not announced at the start of the plea negotiations in this case, as it had been in Bordenkircher, the Commonwealth did inform Leonard in the course of ongoing pretrial plea negotiations on the rape and abduction charges of its intention to do so. Thus, as in Bordenkircher, this was not a situation "where the prosecutor without notice brought an additional . . . charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty." Bordenkircher, 434 U.S. at 360. Leonard "was thus fully informed of the true terms" of the Commonwealth's plea offer and was free to accept or reject that offer "when he made his decision to plead not guilty." Id.

Leonard further points to the fact the Commonwealth waited until a week before the trial on the rape and abduction charges was scheduled to start to obtain the attempted murder indictment as evidence of the Commonwealth's actual vindictiveness. The Commonwealth's timing, he argues, "forced" him to ask for a continuance of that trial and thus extended his stay in jail awaiting the resolution of the rape and abduction charges.[3]

We agree with the trial court's determination that the circumstances of this case "do not rise to the level of a due

---

[3] The initial rape and abduction charges that are the subject of this claim were, we note, later nolle prossed, by agreement of the parties, because they had been improperly

process violation."  The record reveals the Commonwealth and Leonard engaged in ongoing plea negotiations in this case over the course of several months.  Those negotiations commenced prior to the preliminary hearing held on November 9, 1999.  Following Leonard's indictment on November 15, 1999, for rape and abduction with intent to defile, the trial court set a trial date of December 21, 1999.  Prior to that trial date, the Commonwealth sought and obtained a continuance of the trial to January 31, 2000.  The Commonwealth indicated at the time that it intended to seek an additional indictment against Leonard as a second-time violent sexual offender under Code § 18.2-67.5:3, which carries a mandatory life sentence.  Plea negotiations over the next several weeks focused on that possible course of action.  Upon subsequently learning, however, that Leonard's prior convictions did not warrant the enhanced penalty provided for in Code § 18.2-67.5:3, the Commonwealth indicated it would not pursue such an indictment.

Following further unsuccessful negotiation, Leonard obtained a continuance of the trial to March 1, 2000.  On February 16, 2000, the Commonwealth informed Leonard of its intention to seek an indictment against him for attempted murder if the parties could not reach a plea agreement.  When Leonard informed the Commonwealth he would not plead guilty, the Commonwealth proceeded to obtain an attempted murder indictment

certified to the grand jury by the general district court.

from the first available grand jury on February 22, 2000.  On February 25, 2000, Leonard sought and obtained a continuance of the trial on the rape and abduction charges so that all three charges could be tried together.

We observe nothing in these circumstances, reflecting as they do the unexceptional ebbs and flows of a continuing plea negotiation, that warrants the conclusion that the Commonwealth's timing in obtaining the indictment for attempted murder a week before the trial on the rape and abduction charges was set to commence constituted actual vindictiveness.  Not only did the Commonwealth inform Leonard well before the trial on the rape and abduction charges was scheduled to start of its intention to obtain the indictment for attempted murder if plea negotiations failed, it obtained that indictment a week before the trial's scheduled start from the first available grand jury following the failure of the parties' final plea negotiations.

Furthermore, the trial court was clearly prepared to set the attempted murder charge for a separate trial and thus allow the trial on the rape and abduction charges to go forward as scheduled, had that been Leonard's preference.  Instead, preferring to have all three charges tried together, Leonard requested the trial on the rape and abduction charges be continued, thus resulting in his continued incarceration on those charges.  Accordingly, the trial court properly rejected Leonard's claim on such grounds.  See Manns v. Commonwealth, 13

Va. App. 677, 680, 414 S.E.2d 613, 615 (1992) (holding that a party may not take advantage of a situation he invited).

We conclude, therefore, that the Commonwealth's conduct in this case, which, like the prosecution's conduct in Bordenkircher, "no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing [an additional] charge[] on which he was plainly subject to prosecution," did not constitute actual prosecutorial vindictiveness. Bordenkircher, 434 U.S. at 365. Thus, we hold the trial court did not err in refusing to dismiss the indictment for attempted murder.

### III. EVIDENCE OF ATTEMPTED ESCAPE

Leonard next contends the trial court erred in allowing the Commonwealth to cross-examine him about his attempt to escape from jail. Because he was being held at the time of the escape attempt on multiple charges, some of which were unrelated to this case, and was not charged with attempted murder, it could not be shown, he argues, that he attempted to escape to avoid prosecution on the rape, abduction with intent to defile, and attempted murder charges. Thus, he concludes, the evidence of his escape attempt was not relevant to show his consciousness of guilt as to those charges and was therefore inadmissible. We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be

disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1998). "[A] trial court 'by definition abuses its discretion when it makes an error of law.'" Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). In determining whether the trial court made an error of law, "we review the trial court's . . . legal conclusions de novo." Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998).

"As a general rule, only under limited circumstances may evidence of other offenses by an accused be admitted to prove the offense at bar." Langhorne v. Commonwealth, 13 Va. App. 97, 101, 409 S.E.2d 476, 479 (1991). However, "[a]lthough flight to avoid prosecution is evidence of another crime, it is nevertheless admissible to show a consciousness of guilt." Id. at 102, 409 S.E.2d at 479. Indeed, "'it is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" Id. at 102, 409 S.E.2d at 480 (quoting United States v. Ballard, 423 F.2d 127, 133 (5th Cir. 1970)).

Moreover, evidence of an accused's attempt to escape from jail before trial is relevant to prove flight to avoid prosecution on the charge for which the accused was

incarcerated, and is thus admissible to show a consciousness of guilt. See Anderson v. Commonwealth, 100 Va. 860, 862-63, 42 S.E. 865, 865 (1902) (holding that the trial court did not err "in permitting the introduction of evidence showing that [defendant], six weeks after the homicide with which he [was] charged, and twelve days before the term of the court at which he was tried began, attempted to break jail and escape"), overruled on other grounds by Kelley v. Commonwealth, 140 Va. 522, 125 S.E. 437 (1924). As the Supreme Court of Virginia explained in Anderson:

> When a suspected person attempts to escape or evade a threatened prosecution, it may be argued that he does so from consciousness of guilt; and though the inference is by no means strong enough by itself to warrant a conviction, yet it may become one of a series of circumstances from which guilt may be inferred. An attempt to escape or evade prosecution is not to be regarded as a part of the res gestae, but only as a circumstance to be considered by the jury along with the other facts and circumstances tending to establish the guilt of the accused. The nearer, however, to the commission of the crime committed, the more cogent would the circumstance that the suspected person attempted to escape, or to evade prosecution, but it should be cautiously considered, because it may be attributable to a number of other reasons, than consciousness of guilt.

Id. at 863, 42 S.E. at 865.

In Anderson, the defendant was being held in jail at the time of the escape attempt on a single charge of murder and was subsequently prosecuted at trial on that charge alone. Id. at

862-63, 42 S.E. at 865.  Thus, the inferential connection between the defendant's escape attempt and his consciousness of guilt as to the murder charge was readily apparent.

Here, however, the connection between Leonard's escape attempt and the charges on which he was tried is not quite as obvious.  At the time of the attempted escape, Leonard was being held on the instant rape and abduction with intent to defile charges, as well as on charges of unauthorized use of a vehicle and violation of the terms of his parole.  Leonard was not on trial in this case on the latter two charges.  In addition, Leonard had not yet been charged with attempted murder when he attempted to escape.

Leonard argues that, in light of these circumstances, it is impossible to reasonably infer that his attempted escape was necessarily related to the rape, abduction, and attempted murder charges.  It cannot be concluded, he asserts, that, in attempting to escape from jail, he sought to avoid prosecution on the rape and abduction charges, rather than on the unauthorized use of a vehicle and parole violation charges.  Furthermore, he continues, it cannot be concluded that he attempted to escape to avoid prosecution on the attempted murder charge because he had not yet even been charged with that crime when he made the attempt.

"'A court will generally scrutinize the facts of each case to determine whether the jury should be given the opportunity to

draw [an] inference of guilt from the defendant's flight.'" Langhorne, 13 Va. App. at 102-03, 409 S.E.2d at 480 (quoting United States v. Martinez, 681 F.2d 1248, 1257 (10th Cir. 1982)).

In Langhorne, the defendant objected to the admission of evidence showing that he attempted to flee when the police stopped the car in which he was riding. Id. at 100, 409 S.E.2d at 478. The defendant argued that such evidence was inadmissible to show his consciousness of guilt because it was not necessarily related to the distributing heroin and conspiring to distribute heroin charges for which he was on trial. Id. Given that he had multiple charges pending against him and was on "Richmond's top ten most wanted list" when he fled, the jury could not reasonably infer, he argued, that he fled to avoid arrest on the heroin and conspiracy charges, rather than the other pending charges. Id. Finding the evidence of the defendant's flight was properly admitted, we observed the defendant could not "avoid the inferences which the fact finder may draw from his actions because other charges were pending against him and he may have also been evading those charges." Id. at 103, 409 S.E.2d at 480.

Scrutinizing the facts of the present case, we cannot say the trial court abused its discretion in allowing the jury to consider the evidence of Leonard's attempt to escape from jail as evidence of his consciousness of guilt as to the rape and

abduction with intent to defile charges, even though he was also incarcerated at the time of the attempted escape on two other charges. The offenses of rape and abduction with intent to defile both carry a maximum sentence of life imprisonment. See Code § 18.2-61; Code § 18.2-48 and Code § 18.2-10. Thus, in light of the seriousness of those charges, it defies logic to suggest, as Leonard does, that the jury could not reasonably infer he attempted to escape from jail to avoid prosecution on those charges simply because he was also charged with two lesser offenses at the time.

Likewise, we cannot say the trial court abused its discretion in allowing the jury to consider the evidence of Leonard's attempted escape as evidence of his consciousness of guilt as to the attempted murder charge. Attempted murder carries a maximum sentence of ten years. See Code §§ 18.2-32, 18.2-26, and 18.2-10. Although he was not yet charged with that offense when he attempted to escape from jail, Leonard clearly was aware, at the time, that the police had information connecting him to that crime and that he would likely be prosecuted for it.[4]

---

[4] Indeed, not only was the attempted murder charge based on the same factual predicate as the rape and abduction charges, the evidence shows that Leonard discovered he had not actually killed S.T. only in talking to the police following his arrest for the rape and abduction of S.T. Having agreed to speak with the police, Leonard, upon being shown a letter written by the victim describing what Leonard had done to her, told the interviewing officer, "[T]here's no way that the victim could

We hold, therefore, that the trial court did not err in admitting evidence of Leonard's attempt to escape from jail to prove flight to avoid prosecution and thus show his consciousness of guilt concerning the offenses of which he was subsequently convicted in this case.

IV.  OPINION OF NURSE EXAMINER ON CAUSATION OF SEXUAL INJURIES

Finally, Leonard contends the trial court erred in permitting a sexual assault nurse examiner to express an expert medical opinion on the causation of S.T.'s sexual injuries. Only a medical doctor, Leonard argues, may testify as an expert regarding the cause of a victim's injury.

During the pendency of this appeal, the Supreme Court of Virginia issued its decision in Velazquez v. Commonwealth, 263 Va. 95, 557 S.E.2d 213 (2002), which controls the disposition of this issue.  The Court held in Velazquez that

> a [sexual assault nurse examiner] need not
> be licensed to practice medicine to express
> an opinion on the causation of injuries in
> the context of an alleged sexual assault,
> nor does the expression of such an opinion
> by a [sexual assault nurse examiner] in a
> trial constitute the unlawful practice of
> medicine.

Id. at 104, 557 S.E.2d at 218.

---

have written that letter because she was dead."  Leonard
demanded proof that S.T. was not dead.  When the officer showed
Leonard a photograph of the injured victim, Leonard responded,
"I cannot talk to you.  I'm dead in the water."

Because, in the present case, the sexual assault nurse examiner expressed an opinion on the causation of S.T.'s injuries in the context of an alleged sexual assault, we find no error in the judgment of the trial court on this issue.

Accordingly, we affirm Leonard's convictions.

<u>Affirmed.</u>