COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Senior Judge Bumgardner
Argued at Richmond, Virginia

LEROY PETERSON, S/K/A
  LEROY McCOY PETERSON
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0693-08-1              JUDGE D. ARTHUR KELSEY
                                                  MARCH 24, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                            Westbrook J. Parker, Judge

        S. Jane Chittom, Appellate Defender (Office of the Appellate
        Defender, on brief), for appellant.

        Erin M. Kulpa, Assistant Attorney General (Robert F. McDonnell,
        Attorney General, on brief), for appellee.


        The trial court found Leroy Peterson, a convicted felon, guilty of possessing a firearm in

violation of Code § 18.2-308.2(A).  On appeal, Peterson challenges the sufficiency of the

evidence used to convict him.  Finding the evidence sufficient, we affirm.

                                            I.

        On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

        Corporal Richard Harvey, Jr., of the Franklin Police Department, was on night patrol in a

marked police vehicle.  Just as he was "rounding the corner" at the 600 block of Bank Street,

─────────────────────

        [*] Pursuant to Code § 17.1-413 this opinion is not designated for publication.

Harvey heard "three to four pistol shots." "The last shot was being fired" when Harvey came up on the corner. Harvey immediately "looked in the direction the shots came from" and saw a "lone individual" (later identified as Peterson) standing in a parking lot. The lot was lit by a streetlight. As Harvey turned into the parking lot, Peterson "immediately turned his back" to the officer and "stuck his hands in front of him where they could not be seen." Harvey saw no other individuals in the area. When the police car's headlights illuminated Peterson, he "looked over his shoulder and began running."

In his vehicle, Corporal Harvey chased Peterson as he ran through an apartment complex. Peterson made a "U-turn" in front of one of the buildings as Harvey continued to give chase. Peterson made another "U-turn" in front of another building. During the U-turns, Harvey temporarily lost sight of Peterson. At one of the U-turns, "there were several people standing out on the stoop" as Peterson ran past them.

Over his vehicle loudspeaker, Harvey shouted "stop, police" numerous times. In response, Peterson "just ran faster." The chase lasted about two minutes. When Peterson eventually tired and started to walk, Harvey got out of his vehicle and drew his weapon. Harvey ordered Peterson to lie down, but he refused to do so. Harvey physically pinned Peterson to the ground. Other officers arrived on the scene and helped subdue Peterson as he struggled "the whole time" to break free. Believing Peterson fired the earlier shots, Harvey searched him for a firearm but found none. In the dark, Harvey attempted to retrace the path of the two-minute chase to find a discarded handgun. But this, too, was unsuccessful.

Questioned by Corporal Harvey, Peterson claimed he had been shot at by someone in a maroon Pontiac. Harvey asked Peterson why he ran from the police vehicle. Harvey had no response. Later that night, other officers located a maroon Pontiac. Harvey participated in the search of the vehicle and found a loaded firearm. No carbon residue remained in the barrel and it

did not smell of gunpowder, strongly indicating the firearm had not recently been fired. Furthermore, no spent shell casings were found in the vehicle.

Harvey arrested Peterson, a felon, for possession of a firearm by a convicted felon. Forensic tests of Peterson's right hand revealed the presence of gunshot primer residue. A "primer residue analyst" testified at trial that he used a "scanning electron microscope" and an "energy dispersive X-ray analyzer" to confirm the presence of primer residue on Peterson's right hand from swabs taken on the night of his arrest. For primer residue to exist on a person's hand, the expert opined, the person would either have to fire the weapon himself, be in very close proximity to someone else firing a weapon, or receive it by "transmission" from someone who has primer residue "on their hands."

Corporal Harvey, however, testified he had not fired a handgun anytime the day of Peterson's arrest and that, at any rate, he always cleaned his hands after firing a handgun. "It's a lead poison danger if you don't wash your hands immediately after firing a firearm," Harvey explained. Harvey taught this standard procedure to officers at the police academy and to his colleagues at the Franklin Police Department.

Peterson offered no defense and moved to strike the evidence. Finding the circumstantial evidence compelling, the trial court denied the motion and found Peterson guilty.

II.

Peterson argues the trial court erred as a matter of law in finding him guilty of felony possession of a firearm. We disagree.

A.  STANDARD OF APPELLATE REVIEW

On appeal, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original, citation omitted). Instead, we ask only "whether, after viewing the

- 3 -

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319) (emphasis in original). These principles recognize that an appellate court is "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate judges have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

In circumstantial evidence cases, the reasonable doubt standard requires proof "sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Properly understood, however, "the reasonable-hypothesis principle is not a discrete rule unto itself." Haskins, 44 Va. App. at 8, 602 S.E.2d at 405. "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Hudson, 265 Va. at 513, 578 S.E.2d at 785. Thus, the principle "does not add to the burden of proof placed upon the Commonwealth in a criminal case." Id. It merely "reiterates the standard applicable to every criminal case." Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (*en banc*) (citation and internal quotation marks omitted), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003) (*per curiam* order adopting reasoning of the Court of Appeals).

In addition, an appellate court cannot "consider otherwise innocent circumstances in isolation and conclude that each circumstance standing alone" falls short of proving the defendant's guilt. Hughes v. Commonwealth, 18 Va. App. 510, 524, 446 S.E.2d 451, 460 (1994) (*en banc*). We cannot do so because "that approach denies reality." Id. Our common experiences teach that circumstances "do not exist in isolation of one another but exist together

- 4 -

with every other proven fact and circumstance in the case." Id. "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (citation omitted). "Common sense and the common experience of men are our best guides." Gilland v. Commonwealth, 184 Va. 223, 232, 35 S.E.2d 130, 133 (1945) (citation omitted). Together, they are the best "yardstick by which circumstantial evidence should be measured." Id. (citation omitted). "'Evidence is seldom sufficient,'" after all, "to establish any fact as demonstrated and beyond all doubt.'" Harris v. Commonwealth, 206 Va. 882, 887, 147 S.E.2d 88, 92 (1966) (citation omitted).

### B. SUFFICIENCY OF EVIDENCE — FIREARM POSSESSION

In this case, a rational factfinder could conclude beyond a reasonable doubt that Peterson possessed a firearm. The critical circumstances include:

- Corporal Harvey heard the last pistol shot "just as" he rounded the corner. Immediately thereafter he saw Peterson in the parking lot, the very area from which the sound of the gunfire emanated.

- Harvey observed no one else in the parking lot.

- When Harvey arrived, Peterson quickly turned his back to the police vehicle and conspicuously hid his hands. At the moment the headlights illuminated Peterson, he went into headlong flight.

- Peterson ran for about two minutes (quite a distance for a flat-out run) even as Harvey shouted through his loudspeaker, "stop, police." In response to these verbal orders, Peterson ran faster.[1]

---

[1] As we have said in analogous situations, "while appellant's flight might have been attributable to several causes, 'consciousness of guilt' could be inferred by the trial court if any one of those causes was the instant offense." Ricks v. Commonwealth, 39 Va. App. 330, 337, 573 S.E.2d 266, 269 (2002); see also McCain v. Commonwealth, 261 Va. 483, 492-94, 545 S.E.2d 541, 546-47 (2001); Clagett v. Commonwealth, 252 Va. 79, 93-94, 472 S.E.2d 263, 271 (1996); Leonard v. Commonwealth, 39 Va. App. 134, 149, 571 S.E.2d 306, 314 (2002); Hope v. Commonwealth, 10 Va. App. 381, 386, 392 S.E.2d 830, 833-34 (1990) (*en banc*). Flight alone,

- When Harvey finally caught up with Peterson, Peterson struggled with the officer and attempted to escape.[2]

- Harvey retraced the chase route but, in the dark, was unable to find any discarded firearm. On two occasions during the chase, however, Harvey lost visual contact with Peterson. And, on one of the two occasions, during a U-turn by Peterson in front of an apartment building, several individuals were present on a nearby stoop.

- Peterson claimed the gunfire came from a maroon Pontiac. Harvey, however, did not see a maroon Pontiac in or near the parking lot when he rounded the corner just after the last shot.

- Officers located the maroon Pontiac. In it, Harvey found a fully loaded handgun that had *not* been recently fired. He searched for, and did not find, any spent shell casings that might corroborate Peterson's claim.[3]

We need not decide whether these circumstances, taken together, would be sufficient for Peterson's conviction because the evidentiary record does not end there. One additional fact wholly drains any reasonableness out of the reasonable doubt equation: Corporal Harvey discovered primer residue on Peterson's right hand shortly after his apprehension — suggesting he had recently fired a firearm. Peterson argues on appeal that the probative value of the primer residue should be discounted because of the possibility (acknowledged by the Commonwealth's

---

however, does not create a "presumption of guilt." Turman v. Commonwealth, 276 Va. 558, 565, 667 S.E.2d 767, 770 (2008).

[2] See, e.g., Williams v. Commonwealth, 85 Va. 607, 614, 8 S.E. 470, 473-74 (1889) (recognizing the accused's "desperate resistance . . . showed a strong determination to resist arrest at extreme hazards" and thereby raised an inference of guilt); Leonard, 39 Va. App. at 149, 571 S.E.2d at 314 (stating it is "today universally conceded" that an accused's "resistance to arrest" is "evidence of consciousness of guilt, and thus of guilt itself"); Welch v. Commonwealth, 15 Va. App. 518, 525, 425 S.E.2d 101, 106 (1992).

[3] See, e.g., Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002) (acknowledging the defendant's statement to police "denying responsibility" for the crime and "attempting to shift the blame" to another individual were relevant to show the defendant's "consciousness of guilt"); Pearson v. Commonwealth, 221 Va. 936, 946, 275 S.E.2d 893, 900 (1981) (finding incriminatory that "the story [the defendant] told the authorities was a deliberate falsehood designed to conceal what had happened and focus suspicion upon some fugitive gunman"); Harris, 206 Va. at 887-88, 147 S.E.2d at 92 (recognizing in cases of "circumstantial evidence, much weight is given to contradictory statements of material facts by the accused").

expert) that one of the police officers had primer residue on his hands and somehow smudged it onto Peterson's right hand during his arrest. We disagree.

Peterson argued the smudge hypothesis at trial, as required for purposes of appellate review. See Hudson, 265 Va. at 514, 578 S.E.2d at 786 (limiting appellate review only to hypotheses of innocence "advanced by the accused at trial"). Sitting as factfinder, however, the trial court rejected it as an unreasonable explanation of the facts. It cannot be said that the trial court "arbitrarily" chose, "as between two equally plausible interpretations, one that incriminates the defendant." Haskins, 44 Va. App. at 9, 602 S.E.2d at 406 (citation omitted). Such a choice becomes *arbitrary* only when "no rational factfinder" could reject the exculpatory hypothesis as an unreasonable interpretation of the facts. Id. (citation omitted).[4] "Whether the hypothesis of innocence is reasonable," after all, "is itself a 'question of fact,' subject to deferential appellate review." Id. (citations omitted).

When examining an "alternate hypothesis of innocence in a circumstantial evidence case," the question is not whether "some evidence" supports the hypothesis, but whether a rational factfinder could find the incriminating evidence renders the hypothesis of innocence unreasonable. Hudson, 265 Va. at 513, 578 S.E.2d at 785. "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964); see also Blow v. Commonwealth, 52 Va. App. 533, 665 S.E.2d 254 (2008).

---

[4] This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003). Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted).

Governed by these principles, we cannot say the trial court arbitrarily rejected Peterson's hypothesis that the primer residue on his hand came from one of the police officers. The arresting officer, Corporal Harvey, testified he had not recently fired a firearm. He also made clear that police officers in his department (which would include those assisting him in subduing Peterson) were specifically trained, both at the police academy and during intra-department training, to sanitize their hands after firing a firearm because of the risk of lead poisoning. No evidence from any witness contradicted Harvey's testimony or suggested that any other officer had acted inconsistently with their training.

For these reasons, the trial court had ample grounds to reject Peterson's smudge hypothesis and to find that the primer residue on Peterson's hand completed the loop of circumstances proving his guilt. Nothing more was required. "We place too great a burden on the Commonwealth if we require it to exclude every possible theory or surmise presented by the defense. Our precedents do not require this. The hypotheses which the prosecution must reasonably exclude are those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'" Black v. Commonwealth, 222 Va. 838, 841, 284 S.E.2d 608, 609 (1981).

### III.

Because the evidence supports the trial court's finding that Peterson, a convicted felon, possessed a firearm, we affirm his conviction under Code § 18.2-308.2(A).

Affirmed.