# COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Fulton and White
Argued at Salem, Virginia

TAREE JEANETTA BETHEA

MEMORANDUM OPINION* BY
v.        Record No. 0227-24-3          JUDGE JUNIUS P. FULTON, III
                                         FEBRUARY 25, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

After a bench trial, the trial court convicted Taree Jeanetta Bethea of grand larceny in

violation of Code § 18.2-103. By order of February 1, 2024, the trial court sentenced Bethea to

ten years' incarceration, with eight years suspended. Bethea challenges the sufficiency of the

evidence to prove the value of the stolen items. She also challenges the sufficiency of the

evidence to identify her as the perpetrator. We find the evidence was sufficient to prove that the

value of the items exceeded the statutory threshold for grand larceny, and to identify her as the

perpetrator, and thus affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

UNPUBLISHED

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On December 14, 2020, after learning of a "large push out [theft] of merchandise" from the Martinsville Lowes store that occurred on December 7, 2020, Brian Hall, a Lowes asset protection employee, viewed security camera footage and reported the theft to law enforcement. On December 12, 2020, Will Lawson, a Lowes senior asset protection employee, reported to law enforcement that two women, who he believed were responsible for multiple shoplifting incidents, were at the Wytheville Lowes store in a blue Dodge pickup truck. Wytheville Police Officer Zack Taylor later conducted a traffic stop of a blue Dodge pickup truck matching the description Lawson had given. Officer Taylor heard alarms coming from the truck's bed and ordered Bethea and Adrienne Johnson, the only occupants, to exit the truck. He then observed stolen DeWalt tools in the bed.

Wytheville Police Officer Umberger arrived at the scene and found six DeWalt tool kits with activated "security alarm tags" in the truck's bed, plus a DeWalt tool kit, a Bosch tool kit, a blue wig, and some of Johnson's belongings in the rear of the cab. Bethea claimed that she had not stolen anything that day but admitted being with Johnson during the theft and having

shoplifted with Johnson before in North Carolina. Bethea and Johnson were arrested for the December 12, 2020 thefts.

A grand jury subsequently indicted Bethea for felony shoplifting concerning the December 7, 2020 thefts. At trial, the Commonwealth introduced into evidence security camera footage of the Martinsville Lowes store from December 7, 2020. The footage depicts two women entering the store, one following closely behind the other, each pushing a shopping cart and proceeding to the tool department after going in different directions. One woman had on a long-sleeve pink shirt, surgical-type mask, and a long blue wig under a dark cap, and the other was wearing blue jeans and a dark hooded shirt. After loading their carts with DeWalt tools, the women pushed the carts past checkout registers and exited the store. Once outside, the women loaded the tools into the bed of a red pickup truck, which an unidentified person drove away, followed by the two women in another vehicle.

At trial, Hall identified Bethea as the woman wearing a pink long-sleeve shirt, mask, and blue wig in the December 7, 2020 footage. He identified Johnson as the other woman depicted in the video. Hall also described security camera video that depicted Bethea, who wore a "pink hoodie" and had "blue hair," lifting a "security gate" in the tool department and "load[ing] up the shopping cart."[1] The Commonwealth asked if Hall knew "the value of the items that they took," and Hall replied that the "[g]rand total was over [$3,000] if I remember correctly." Bethea asked if Hall knew of a "ring of young ladies" stealing tools and other construction materials from Lowes stores, which Hall did, and how many of those women Hall had identified. Hall replied

---

[1] Hall testified that Lowes had given that video to the Commonwealth, but by the time of trial, the video file was corrupted and unplayable.

that he had identified only Bethea and Johnson.[2] Bethea asked if Hall had heard the name "Jamice Lewis"; Hall had not. Hall also identified Bethea in still-frame photographs taken from security camera footage from the three incidents.

Lawson testified that after the December 12, 2020 incident, he reviewed security camera video from a December 8, 2020 theft at the Wytheville store. The Commonwealth introduced into evidence security camera footage from both incidents. The footage from December 8, 2020, depicts two women walking in the store's lumber entrance, one wearing a long blue wig under a light-colored cap, surgical-type mask, light-blue jacket with various torn areas in the fabric, and dark pants, and the other wearing a dark cap, mask, dark-blue jacket, and blue jeans. The footage depicts them retrieving empty shopping carts and later pushing carts loaded with boxed DeWalt tools and other items to the exit without stopping at a register. Lawson identified Bethea as the woman who wore the blue wig and Johnson as the other woman.

The December 12, 2020 security camera footage depicts two women entering the store's lumber entrance, one wearing a light-blue jacket with tears in the fabric. Lawson identified Bethea as the woman in the light-blue jacket, which he believed was the same one she wore in the December 8, 2020 incident. He identified the other woman as Johnson. Bethea conceded that she had pleaded guilty in connection with the December 12, 2020 theft and was depicted in the footage from that incident.[3]

---

[2] Bethea asked whether Johnson had pleaded guilty to charges stemming from the December 7, 2020 incident, and Hall confirmed that she had. He had not spoken with Johnson about the theft or the identity of anyone who had been with her.

[3] Bethea made these concessions while objecting to the admission of the December 8, 2020 footage because charges stemming from that incident had not been adjudicated. According to Lawson, Bethea was charged with theft for the December 8, 2020 incident but the charge was later nolle prossed.

Lawson testified that he was aware of dozens of thefts of DeWalt tools by women. He knew that Bethea had been convicted of one theft and did not know how many times Johnson had been convicted. He admitted that women other than Johnson and Bethea had been convicted for some of those thefts and that some of those women had "the same shape body and build" as Bethea. Lawson acknowledged that he was aware of "many different" vehicles used by persons who were involved in thefts from Lowes stores.

Officer Umberger testified that although he was aware of other thefts of DeWalt tools from Lowes stores perpetrated by women, he did not know of any women other than Johnson who had been convicted of those thefts. The Commonwealth introduced into evidence the blue wig that had been recovered from the blue pickup truck on December 12, 2020. Officer Umberger testified that while he was talking to Bethea outside the truck, she asked if she could have the wig back.

After the Commonwealth's case-in-chief, Bethea moved to strike the evidence. She argued that the evidence did not prove that she, rather than another woman of similar appearance and body type, was the culprit in the December 7, 2020 theft. She emphasized the evidence that multiple vehicles were involved in the many thefts that had occurred and that the December 7, 2020 footage did not depict a blue wig.

After argument by counsel, the trial court found that Hall had identified Bethea in the December 7, 2020 security camera footage and testified that she had blue hair in another video depicting her lifting a security gate in the tool section. Accordingly, the trial court overruled the motion to strike.

Bethea testified that she was in Winston-Salem, North Carolina, on December 7, 2020, performing a "laser teeth whitening" procedure for a client, Tamara Townsman. She asserted that the appointment was at 3:00 p.m. for an hour-long session and that Townsman "probably left

about 4:15." Bethea claimed to have a "cash app" receipt for payment at 4:15 p.m. on December 7, 2020, from Townsman; she explained Townsman's absence at trial by stating that she had been "going to radiation" treatment for cancer. Bethea testified that she had an Instagram page for her teeth whitening business.[4] Bethea denied being in Martinsville on December 7, 2020, and claimed instead that it was a woman named "Janece Lewis" depicted in the security camera footage. She did not know if Lewis had been charged or convicted of any thefts.

Bethea admitted that she was with Johnson on December 12, 2020, in Wytheville, but asserted that her only role that day was to drive Johnson to "get some DeWalt tools," not to steal anything herself; she would receive payment based on how successful Johnson was. Bethea claimed that she knew of "[q]uite a few" other young women that stole tools from Lowes and that about 12 of them had been charged with theft. She also claimed that the tools were stolen so they could be sold but denied knowing how much they were worth.

Bethea admitted that she had been convicted of more than one felony, but did not know how many, and "[q]uite a few" misdemeanors that involved lying, cheating, or stealing. She also admitted that she wore her own clothes on December 12, 2020, and confirmed that she was depicted in the camera footage from that day wearing a light-blue jacket with torn areas in its fabric. Bethea denied asking Officer Umberger about the blue wig and denied that it was hers; she claimed it was Johnson who had mentioned the wig.

After Bethea presented her evidence, the Commonwealth recalled Officer Umberger in rebuttal. He acknowledged that he had not put in his report of the incident anything about Bethea's request for the wig or her statement about its cost, but testified that he was certain that Bethea, not Johnson, asked about the wig, she "wanted her wig back," and that she had told him it cost over $300.

---

[4] Bethea did not offer the receipt or Instagram page for admission into evidence.

After the close of all the evidence, Bethea argued that the evidence did not prove that she was involved in the December 7, 2020 thefts. She emphasized that "dozens of thefts at Lowes stores" had been perpetrated by "multiple" women using the same modus operandi and "multiple vehicles." Bethea highlighted Lawson's testimony that many persons had committed thefts of tools from Lowes and her own testimony that she was in North Carolina on December 7, 2020. She also emphasized that her testimony was corroborated by the "cash app" receipt. Bethea argued that her admission of guilt regarding the December 12, 2020 incident, even though she did not take anything on that day, proved that she "takes responsibility for the things that she is actually guilty of." Therefore, she urged, the trial court should believe her denial of involvement in the December 7, 2020 theft.

The Commonwealth contended that Bethea's testimony was not credible given her multiple felony and misdemeanor convictions. It emphasized that the December 7, December 8, and December 12, 2020 thefts demonstrated a consistent pattern of two women entering the store, taking DeWalt tools, and leaving without paying for the items. It also highlighted that footage from the December 12, 2020 theft depicts Bethea wearing the same jacket as the December 8, 2020 footage depicts being worn by one of the women and that Bethea admitted that it was her jacket. Further, the December 7 and December 8 incidents both involved a red truck. And, the Commonwealth argued, the woman it contended was Bethea displayed the same mannerisms and physical characteristics and wore the same shoes and pants in the footage from all three incidents.

After argument by counsel, the trial court found that Bethea's convictions lessened her credibility and the "cash app" receipt proved only when she received payment. The trial court found that Bethea had conceded that she was in a ring that shoplifted from Lowes stores. The trial court also found that the security camera footage from December 8, 2020, depicts the same

- 7 -

woman as does the footage from December 12, 2020, "based on clothes, based on appearance, based on walking and everything else." Further, the women in the December 8, 2020 incident, which the trial court found Bethea to have participated in, used a red truck, as did the women in the December 7, 2020 incident. Those facts together raised a suspicion of guilt.

Additionally, however, the trial court found that the blue wig provided the crucial link between Bethea and the theft on December 7, 2020. The trial court emphasized Hall's testimony about the video depicting a woman with blue hair lifting the security gate to access tools and that while the shoes and pants Bethea wore might be commonly-worn, the video depicted a woman wearing a "long blue wig," which "is not common." The trial court also emphasized Officer Umberger's certainty that it was Bethea who asked him about getting the wig back on December 12, 2020. Thus, the trial court found that the evidence proved that Bethea shoplifted tools from the Martinsville Lowes on December 7, 2020. Accordingly, the trial court found Bethea guilty of felony shoplifting in violation of Code § 18.2-103 and continued the case for preparation of a presentence report.[5]

Over five months after trial, Bethea moved the trial court to set aside the conviction. She argued that the evidence did not prove that she shoplifted on December 7, 2020. She emphasized Lawson's testimony that other women of similar "shape, body and build" had been convicted of thefts of tools from Lowes and argued that the evidence did not prove that she, rather than one of those women, was the perpetrator. She also contended that the blue wig did not prove her identity.

---

[5] The trial court found Bethea guilty on August 7, 2023. The sentencing hearing was held on November 29, 2023, and the trial court ordered restitution of $2,434 on that date. The sentencing order was not entered until February 1, 2024, after new counsel was appointed for the appeal (December 12, 2023), and a stay of entry of the final order was granted (December 20, 2023) until January 31, 2024, to permit new counsel to review the record and file post-trial motions. Bethea's motion to set aside the verdict was denied by order entered February 2, 2024.

Bethea also argued that Hall's testimony regarding the value of the stolen tools lacked foundation and was insufficient to prove that the tools were worth more than $1,000. She emphasized that Hall "provided no basis" for his testimony that the value was over $3,000, stated that his valuation was subject to him remembering correctly, combined the value of tools taken by both Bethea and Johnson, and did not identify the "type or number" of stolen items.

The trial court denied the motion to set aside the verdict. At the sentencing hearing, the trial court sentenced Bethea to ten years' incarceration, with eight years suspended. Bethea appeals.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To sustain a conviction for grand larceny, the Commonwealth must prove that the value of the stolen goods is more than $1,000. Code § 18.2-103; *Otey v. Commonwealth*, 71 Va. App. 792,

800 (2020). Ordinarily, a lay witness who is not the property's owner may testify about value if "the witness possesses sufficient knowledge of the value of the property or has had ample opportunity for forming a correct opinion as to value." *DiMaio v. Commonwealth*, 46 Va. App. 755, 764 (2005) (quoting *Walls v. Commonwealth*, 248 Va. 480, 483 (1994)). Additionally, the fact finder "may infer the stealing of the whole from the possession of part." *Henderson v. Commonwealth*, 215 Va. 811, 813 (1975) (quoting *Johnson v. Commonwealth*, 141 Va. 452, 456 (1925)). Once the Commonwealth has met the basic threshold for admissibility, "any gaps in the evidence are relevant to the trier of fact's assessment of its weight rather than its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122-23 (2019). "The relevant value is the stolen merchandise's retail value at the time of the shoplifting." *Twine v. Commonwealth*, 48 Va. App. 224, 230 (2006).

Bethea argues that the trial court erred by finding that the items she took were worth more than $1,000. She contends that Hall's testimony about value was "speculative," lacked foundation, and was "couched in terms of" his ability to remember and did not identify how he arrived at the value. Bethea emphasizes that Hall did not identify the value of the items Bethea took as distinct from those taken by Johnson.

The only direct evidence the Commonwealth presented on value was Hall's testimony that the "[g]rand total" of the value of the tools taken in the December 7, 2020 incident was more than $3,000, "if [he] remember[ed] correctly."[6] The Commonwealth did not ask, and Hall did

---

[6] Bethea does not challenge the admission of Hall's testimony on value; rather, her challenge is directed solely at its ability to support her conviction for grand larceny. An appellate court may structure a decision to assume without deciding a point "to resolve [an] appeal on the best and narrowest grounds." *McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018); *see Ali v. Commonwealth*, 75 Va. App. 16, 37 n.9 (2022) ("The mechanism of assuming without deciding a particular point in issue sometimes facilitates the appellate court's achievement" of the goal of deciding an appeal on the best and narrowest grounds."). Therefore, we assume without deciding that Hall's testimony about the value of the stolen goods was admissible.

- 10 -

not explain, how he arrived at that figure. However, while there is no evidence that Hall scanned the recovered items at a Lowes cash register to determine their value, looked at price tags on the boxes, or used some other method to determine value, the evidence also showed Hall was employed in a loss prevention and asset protection capacity by Lowes and that he had ample opportunity to view the stolen items on the store's video.[7] *Berry v. Commonwealth*, No. 1212-09-02, slip op. at 6, 2010 Va. App. LEXIS 217, at \*9 (May 25, 2010) (evidence that tow dolly was "between $1,500 and $1,700" in conjunction with surveillance video evidence, was sufficient to prove value). The videos he viewed and testified about showed Bethea and Johnson entering the store, then entering the tool area where the DeWalt items were located, "lift[ing] up the security gate, load[ing] up the shopping cart," "and they exit . . . without even stopping at the cash register," and out into the parking lot where they quickly loaded the boxes into the bed of a red truck and fled the area. The videos show several boxes of items in each cart as they leave the store.[8]

Appellate courts defer significantly to a trial court's interpretation of witness testimony because the trial judge, having seen and heard the witnesses, is in a better position to evaluate the evidence. *Meade v. Commonwealth*, 74 Va. App. 796, 805 (2022). "We owe deference to the trial court's interpretation of all of the evidence, including video evidence." *Id.* at 806. This Court will not substitute its judgment for that of the trial court's factual findings unless plainly wrong or without evidence to support them. *Id.* at 805. "Accordingly, [t]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Id.* at 806. Thus, the trial court concluded,

---

[7] The store videos showed two full-sized shopping carts each with several boxes of DeWalt tools being pushed out the door to the parking lot.

[8] From the video of Bethea and Johnson in the parking lot, it is possible to count that some nineteen or twenty boxes of tools were tossed into the bed of the red truck.

consistent with *DiMaio*, that Hall had "ample opportunity for forming a correct opinion as to value," and the trial court's determination that Hall's unrebutted opinion as to value as corroborated by the videos was sufficient to establish the statutory minimum of $1,000 will not be disturbed. *Park v. Commonwealth*, 74 Va. App. 635, 655 (2022) (only slight corroboration of the elements of the offense is required to establish the crime was committed beyond a reasonable doubt).

Importantly, Bethea did not object to Hall's testimony as to value at trial, did not cross-examine Hall about value, and only raised this concern five months after trial in her motion to reconsider.[9]  "An objection to the admissibility of evidence must be made when the evidence is presented."  *Kondaurov v. Kerdasha*, 271 Va. 646, 654 (2006); *see also Burns v. Bd. of Supervisors*, 227 Va. 354, 363 (1984) (holding that an appellant's silence amounts to a waiver of her objection to admissibility).  "The objection comes too late if the objecting party remains silent during its presentation and brings the matter to the court's attention by a motion . . . made after the opposing party has rested."  *Id.*  Evidence presented without objection will be deemed to be properly before the trial court.  *Wells v. Commonwealth*, 65 Va. App. 722, 729 (2016).  Once evidence is admitted, its weight is a matter for the fact finder to consider.  *Tipton v. Commonwealth*, 224 Va. 256, 261 (1982).  "If incompetent or hearsay evidence is admitted without objection thereto, the [fact finder] may properly consider it as evidence in the case."  *Talley v. Commonwealth*, No. 1517-09-2, slip op. at 5, 2010 Va. App. LEXIS 441, at *8 (Nov. 9, 2010) (alteration in original) (quoting *Gutshall v. Hamilton*, 134 Va. 416, 422 (1922)).

Bethea only raised challenges to the value of the items stolen after her conviction and sentencing.  Her challenge is unavailing, and the trial court was entitled to consider Hall's

---

[9] Bethea's cross-examination of Hall went only to identity and not value.

unrebutted testimony when convicting her.[10]  *See Gregory v. Commonwealth*, 22 Va. App. 100,

111 (1996) (holding that because the appellant failed to object when the statement at issue was

presented at trial the statement was properly before the trial court).

As to Bethea's argument that there was insufficient evidence to prove she was one of the

perpetrators, identity may be proved by direct evidence or by circumstantial evidence.  *Crawley*

*v. Commonwealth*, 29 Va. App. 372, 375 (1999).  "Videotapes, like photographs, when properly

authenticated, may be admitted . . . as mute, silent, or dumb independent photographic

witnesses."  *Donati v. Commonwealth*, 37 Va. App. 575, 579 (2002) (internal citation and

quotation marks omitted).  Further, videotapes and "[p]hotographs are 'an aid . . . in ascertaining

the truth.'"  *Adams v. Ristine*, 138 Va. 273, 298 (1924).

Actions by an accused including flight, concealment, and attempts to disguise her identity

"are admissible as evidence of consciousness of guilt, and thus of guilt itself."  *Leonard v.*

*Commonwealth*, 39 Va. App. 134, 149 (2002).  Flight "includes the taking of any action, even of

short duration, intended to disguise one's identity and distance oneself from the crime."  *Clagett*

*v. Commonwealth*, 252 Va. 79, 93 (1996) (citing *Edmonson v. Commonwealth*, 248 Va. 388,

390-91 (1994)).  These actions "may be considered in the context of other facts as evidence

tending to show a defendant's consciousness of guilt."  *Jones v. Commonwealth*, 279 Va. 52, 58

(2010).

The trial court found that both direct and circumstantial evidence demonstrated Bethea

was the woman in the blue wig on December 7, 2020.  Hall identified her in court as the

shoplifter wearing the pink shirt and blue wig in the store videos.  By her own admission, Bethea

---

[10] Further, at sentencing, Bethea did not object when she was informed by the trial court that Lowes was seeking restitution in the amount of $2,434.  Her only stated concern at that hearing was whether she would be held jointly and severally liable with the co-defendant. Lastly, Bethea challenged the determination of value as a motion to set aside the verdict.  That motion was denied.

was a member of the ring of women thieves who shoplifted DeWalt tools and sold them to "some Mexicans." She admitted ownership of the wig when questioned by police. The blue wig was consistent with one worn by female shoplifters in incidents in Martinsville and Wytheville. Bethea admitted participating in the later Wytheville theft, and her appearance and manner in that incident are consistent with the appearance and manner of the woman wearing the blue wig in other earlier incidents.

The trial court was entitled to consider Bethea's use of the blue wig, which she was not wearing when stopped by Officer Taylor, as evidence that she was attempting to disguise herself and therefore as evidence of her guilt. *See Leonard*, 39 Va. App. at 149. Moreover, the factfinder was entitled to conclude that her request that Officer Umberger return the wig to her was an effort to conceal or destroy relevant evidence in the case. *See Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) (an accused's attempts to conceal the evidence of her crime are "admissible as evidence of consciousness of guilt, and thus of guilt itself").

The trial court was not required to accept Bethea's alibi claim. *See Pugliese v. Commonwealth*, 16 Va. App. 82, 92 (1993). The trial court was entitled to consider Bethea's testimony impeached by her prior convictions for felonies and for crimes of moral turpitude. *See Shifflett v. Commonwealth*, 289 Va. 10, 11 (2015). The trial court was also entitled to infer that the reason "Tamara Townsman" was not called as a witness by Bethea was because her testimony would have discredited Bethea's alibi claim. *See Graves v. United States*, 150 U.S. 118, 121 (1893).

The trial court did not abuse its discretion, and was not plainly wrong or without evidentiary support, when it found that Bethea was the woman in the blue wig who shoplifted from the Martinsville Lowes on December 7, 2020.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*